In the Matter of FERN ACRES, LTD., Debtor.

Bankruptcy No. BK95–40101.

United States Bankruptcy Court, D. Nebraska.

March 24, 1995.

David W. Pederson, North Platte, NE, for Creditor Lisco State Bank.

John C. Hahn, Lincoln, NE, for Debtor Fern Acres, Ltd.

Richard K. Lydick, Chapter 12 Trustee, Omaha, NE.

### MEMORANDUM

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

This is the third Chapter 12 bankruptcy case filed by Fern Acres Ltd. I conclude that the filing of this case constitutes an abuse of the bankruptcy process and, I hereby sustain the Motion for Relief from Automatic Stay and Motion to Dismiss filed by Lisco State Bank.

### FACTS

The debtor in this case, Fern Acres, Ltd. ("Fern Acres"), is a farming operation which obtained financing from Lisco State Bank (the "Bank"), a creditor herein. The present bankruptcy case is the third Chapter 12 bankruptcy case filed by the debtor, Fern Acres. Fern Acres first filed Chapter 12 bankruptcy in 1987. (BK87–02090). The debtor represented itself pro se at the time of the first bankruptcy case. A plan of reorganization was confirmed in the first bankruptcy case on August 18, 1989. However, the first bankruptcy case was dismissed on May 20, 1991, upon motion of the Bank due to the debtor's continuous defaults under the confirmed plan, and lack of cure thereof. Specifically, the debtor had failed to pay certain real estate taxes and administrative expenses pursuant to the confirmed plan. The real estate taxes at issue in the first bankruptcy case remain unpaid to this date. The dismissal of the first bankruptcy was appealed by the debtor; however dismissal was affirmed by the United States District Court for the District of Nebraska.

Following dismissal of the first bankruptcy case, the Bank filed a foreclosure action in the District Court of Morrill County, Nebraska, Case No. 7113. On August 21, 1992, four days before the scheduled foreclosure sale, the debtor filed its second Chapter 12 bankruptcy case, BK92–41298. The Bank immediately filed a motion to dismiss the second bankruptcy case, which was denied by the court. I elected at that time to give the debtor the benefit of the doubt and a full opportunity to develop a feasible plan of reorganization. The bankruptcy case remained pending for approximately a year and a half, but the debtor was unable to propose a feasible plan of reorganization. At a December 17, 1993 hearing on confirmation of debtor's proposed plan and a motion to dismiss by the Bank, confirmation was denied and the bankruptcy case was dismissed. The proposed plan of reorganization was found not feasible for several reasons. First, the projected income, production, and expenses of the debtor in relation to the proposed plan were unrealistic. Second, similar to the first bankruptcy case, the proposed plan of the debtor did not address many problems in regard to payment of real estate taxes. Third, testimony in support of the financial projections in the plan were found to be not credible.

In addition, in regard to dismissal of the second case, I specifically held that the debtor, Fern Acres, should not be allowed a further opportunity to file a modified plan. See 11 U.S.C. § 1208(c)(5) (1995). In reaching this decision I cited several factors. The debtor had filed consecutive bankruptcy cases on the eve of foreclosure. Although given an extended period to do so, the debtor was unable to develop a feasible plan. Creditors had been unreasonably delayed, contrary to the purpose of Chapter 12, which provides for prompt reorganization. The farming operation was incapable of generating sufficient cash flow to support reorganization of the business. Finally, allowing amendments to the plan to provide for a liquidation of assets would be unfair to creditors, who had already been extensively delayed in enforcing their rights. The debtor appealed the dismissal of the second bankruptcy case; the order of the bankruptcy court was affirmed on appeal.

After the second bankruptcy case (BK92–41298) was dismissed, the Bank continued to pursue its foreclosure action. A state court receiver was appointed on January 25, 1994, and a decree of foreclosure was entered on April 12, 1994. At that time the debtor requested and received a nine month stay of the real estate foreclosure sale. See Neb.

Rev.Stat. § 25–1506 (Reissue 1989). The nine month stay expired on January 12, 1995, and the Bank scheduled publication of the notice of sale on February 1, 1995. However, the debtor filed the present Chapter 12 bankruptcy case, BK95–40101, on January 31, 1994, one day before publication of the notice of sale.

The Bank has filed motions for relief from the automatic stay and for dismissal of this case, asserting, among other things, that the current bankruptcy case was not filed in good faith, is an attempt to further delay the Bank from exercising its rights to realize upon its collateral, and is an abuse of the bankruptcy process. The Bank insists that the time has come to permit the Bank to realize upon its collateral, and it asserts a number of factors in support of this position. First, the Bank emphasizes that since 1987, when the first bankruptcy case was filed, the Bank has received no payments on its debt. At the time the first bankruptcy case was filed in 1987, the debtor owed the Bank approximately $300,000.00. Today, that debt has grown to approximately $800,000.00. Second, during this same period of time, real estate taxes, which are senior in priority to the lien of the Bank, have continued to accrue on the mortgage property. At the time the first bankruptcy was filed in 1987, the unpaid real estate taxes were approximately $87,000.00. Unpaid real estate taxes today are $250,000.00. Third, the Bank asserts that the proposed plan of reorganization is defective. The Bank notes that financial projections submitted by the debtor in support of its currently proposed plan indicate a dramatic increase in projected income and production. The debtor's farming business has lost money every year since its beginning, except in 1990, when the debtor realized a profit of $1,225.00. Therefore, the Bank asserts that the debtor's financial projections are inconsistent with its historical performance. In response to the motions by the Bank, the debtor asserts that the Bank is adequately protected and the proposed plan of reorganization is feasible.

The debtor argues that the Bank's interest in collateral is adequately protected. Although it appears that the Bank may still be somewhat overcollateralized, the debtor has offered to provide adequate protection payments to the Bank in the approximate amount of $90,000.00, $45,000.00 of which is on hand at the present time. The debtor asserts that the value of the collateral has increased due to improvements which the debtor has placed on the premises in the last several months. These improvements include fencing and irrigation wells.

The debtor also asserts that its proposed Chapter 12 plan is feasible because of the investment of $350,000.00 and the improvements to the land.

### DISCUSSION

■■■■ Bankruptcy laws serve the dual purpose of providing good faith debtors with the chance to reorganize, and providing fairness to creditors. I conclude that these important purposes would be frustrated if this case were permitted to remain pending. The debtor has been provided an extended opportunity of time in which to reorganize under both federal and state law—Chapter 12 bankruptcy and the nine month stay granted under state law. During this time, the debtor has not made any payments to the Bank, or any attempt to redeem its property under state law. During this same period of time, the Bank has been denied the right to pursue state law remedies, and its debt has grown from approximately $300,000.00 to $800,000.00. The time has come, in short, to permit the Bank to realize upon its collateral.

■■■ I conclude that cause exists to dismiss this case and to lift the automatic stay for several reasons. First, the decree of this court dismissing the second bankruptcy case is entitled to finality. At the time of dismissal of the second bankruptcy case, I concluded that the debtor was not entitled to file an amended plan, that the debtor was unable to reorganize, and that the Bank was entitled to pursue remedies under applicable non-bankruptcy law. Although the previous decision of this court is not of *res judicata* effect, the debtor should not be allowed to circumvent the holding of this court by obtaining a nine month stay under state law and refiling bankruptcy immediately thereafter. This is essentially what the debtor has done in the present case.

Second, the Bank has been unreasonably delayed in enforcing its rights against the collateral due to the debtor's pursuit of continuous remedies under both federal and state law. I am aware that secured creditors are not entitled to compensation for "lost opportunity costs". See *United Savings Assoc. v. Timbers,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). However, I conclude that, on the facts of this case, the Bank has suffered actual economic injury due to the delay caused by the debtor, which injury is properly considered as a reason for dismissal. Although the Bank remains slightly overcollateralized, the delay caused by the debtor has been prejudicial to the position of the Bank. Since the commencement of the first bankruptcy case, the debt owed to the Bank has more than doubled. The Bank has been denied the opportunity to get this loan off its books by liquidation of collateral. The Bank has been also deprived the opportunity to use the proceeds of such liquidation for other purposes. The debtor has not made any payments on the Bank's debt during the entire period of the delay. There is no indication that the debtor will be able to meet this increased obligation and prevent its continual accrual. In addition, the debt owed on real estate taxes, which are senior in priority to the lien of the Bank, has dramatically increased, deteriorating the position of the Bank in relation to its collateral. Based on these considerations, I conclude that the Bank has been unreasonably delayed from exercising its rights and remedies under state law and that the delay is prejudicial to the Bank's economic interest.

Third, the offer of adequate protection of the Bank's interest, in and of itself, is not a sufficient reason to permit this case to remain pending. The provision of adequate protection does not give the debtor a license to unreasonably delay creditors from exercising their rights and remedies.

Fourth, this bankruptcy case was not filed in good faith. As was the case in the previous two bankruptcy cases the debtor has again waited until the last moment to file bankruptcy in an attempt to prevent a foreclosure sale and frustrate the rights of the Bank. In addition, during the pendency of this bankruptcy case, the Bank has repeatedly had to correct errors and assumptions made by the debtor in its proposed plan. Such errors are typical of past behavior of this debtor.

In support of its position, the debtor asserts it has changed its position and is now ready to reorganize. I acknowledge that the debtor has made some changes. However, I conclude that this case should be dismissed for the above reasons. The previous finding of this court at the time of dismissal of the second bankruptcy case that the debtor is unable to reorganize and should not be allowed to file a new plan, is entitled to some finality under the circumstances of this case. The debtor should not be allowed to continuously file bankruptcy in an attempt to circumvent the rights of the Bank. I also conclude that it is highly unlikely that the plan proposed by the debtor is confirmable or feasible. Since the commencement of the first bankruptcy case, there has been a dramatic increase in the debt owed to the Bank and also on real estate taxes. The projected income provided in the proposed plan is considerably higher than historical performances of the debtor. Given the debtor's past history, I consider the projections of vast increases in income with only minimal increases in expenses to be not credible.