In re Janet D. **STEELEY**, Debtor.

**Bankruptcy No. 98–05272–BGC–13.**

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

Order Denying Reconsideration
April, 1999.

Jan. 25, 1999.

---

Janet D. Steeley, pro se.

Thomas Tutten, Birmingham, AL, for Magna Mortgage Company.

Alan Levine, for SouthTrust Bank.

### Order Denying the Debtor's Motion to Retain Jurisdiction and Granting Magna Mortgage Company's Motion to Transfer

BENJAMIN COHEN, Bankruptcy Judge.

The matters before the Court are the Debtor's *Motion to Retain Jurisdiction* filed on August 10, 1998, and the oral *Motion to Transfer* made by Magna Mortgage Company at the hearing on both matters held on September 23, 1998. Janet Steeley, the debtor; Thomas Tutten, the attorney for Magna Mortgage Company; and Alan Levine, the attorney for SouthTrust Bank, appeared at that hearing.[1] The matters were submitted on the arguments of the parties and the record in this case.

### I. Background

Ms. Steeley has filed six Chapter 13 cases in this Court.[2] The fifth was filed in the Eastern Division of this Court on January 21, 1998.[3] Because of the possibility of a conflict between that court and the debtor, the judge in that division transferred the case to the Northern Division on February 2, 1998. On May 12, 1998, the judge in the Northern Division entered an order lifting the automatic stay in favor of Magna Mortgage Company, the creditor secured by a mortgage on the debtor's home. On the same day the Court entered a similar order in favor of SouthTrust Bank, the secured creditor on the debtor's automobile. On July 13, 1998, the Court dismissed the debtor's case.

In May 1998 and June 1998 the debtor filed appeals of the above-three orders and made requests for stays on appeal. The requests for stays were denied.

On August 10, 1998, after filing her appeals, but before any decisions were rendered on those appeals, Ms. Steeley filed her sixth and most recent Chapter 13 case. That case was filed in the Southern Division of this Court along with the *Motion to Retain Jurisdiction* now pending before this Court. In that motion, Ms. Steeley asked this Court to retain control of her case rather than to transfer the case to another division.

At the hearing on her motion, Ms. Steeley argued that the orders in her fifth case lifting the stay for the secured creditors, the one dismissing her case, and the one denying her stays of those orders on appeal, were entered unfairly. Ms. Steeley explained that she filed the instant case to protect her home from foreclosure. And when asked by this Court why she filed the current case *in this division, rather than in the division of her residence and the division in which she filed her previous cases*, Ms. Steeley further explained, "All I want to do is pay my creditors and *have a chance in a fair and equitable court* in which to get my plan approved and pay my creditors." Unofficial transcription.

At the same hearing, in response to Ms. Steeley's motion and arguments, the attorney for Magna Mortgage Company made, without objection from Ms. Steeley, an oral

---

1. Ms. Steeley was not represented by an attorney.

2. These include case no. 86–05559 filed on July 21, 1986; case no. 87–03471 filed on April 16, 1987; case no. 90–12916 filed on April 13, 1990; case no. 97–42508 filed on August 5, 1997; case no. 98–40204 filed on

January 21, 1998; and the current case, case no. 98–05272 filed on August 10, 1998.

3. The Eastern Division of this Court is located in Anniston, Alabama; the Northern Division in Decatur, Alabama; the Western Division in Tuscaloosa, Alabama; and the Southern Division in Birmingham, Alabama.

*Motion to Transfer* the case to either the Eastern or the Northern Divisions of this Court. After the hearing, and on October 1, 1998, the Chapter 13 trustee for the Southern Division of this Court filed a *Trustee's Objection to Confirmation and Motion to Dismiss.*[4]

## II. Procedure

Clearly, Ms. Steeley's *reason* for filing the current (and sixth) bankruptcy case was to protect her home from foreclosure. But equally clear is that Ms. Steeley's *motives* for filing the case *in the Southern Division of this Court* were to prevent the operation of the orders entered against her in her fifth Chapter 13 case and to seek another forum in which she believed she could obtain a different result.

The Court of Appeals for the Eleventh Circuit, in *Shell Oil Co. v. Waldron (In re Waldron)*, 785 F.2d 936, 941 (11th Cir. 1986), *cert. dismissed,* 478 U.S. 1028, 106 S.Ct. 3343, 92 L.Ed.2d 763 (1986), instructs that if a debtor's Chapter 13 petition appears to be tainted, the debtor's motives must be questioned.[5] The *per curiam* opinion in *Waldron* reads in part:

> We hold that with section 1325(a)(3) Congress intended to provide bankruptcy courts with a discretionary means to preserve the bankruptcy process for its intended purpose. Accordingly, *whenever a Chapter 13 petition appears to be*

tainted *with a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the debtor's motives.* If the court discovers unmistakable manifestations of bad faith, ... confirmation must be denied.

> Unmistakable manifestations of bad faith need not be based upon a finding of actual fraud, requiring proof of malice, scienter or an intent to defraud. We simply require that the bankruptcy courts preserve the integrity of the bankruptcy process by refusing to condone its abuse.

> The cornerstone of the bankruptcy courts has always been the doing of equity. The protections and forgiveness inherent in the bankruptcy laws surely require conduct consistent with the concepts of basic honesty. Good faith or basic honesty is the very antithesis of attempting to circumvent a legal obligation through a technicality of the law.

*Id.* (emphasis added).

■ Although Ms. Steeley did not attempt to hide her desire to have another court consider her circumstances, (her motion for this Court to retain and adjudicate her pending petition was most certainly filed to promote that desire), this Court finds that Ms. Steeley's petition does indeed appear to be tainted.[6] Thus, in ac-

---

**4.** A *Motion for Relief from Stay* filed by Magna Mortgage Company was pending at the time of the hearing. The movant requested the Court to resolve the transfer and venue matters before scheduling that motion. This Court agreed.

**5.** Pursuant to section 105 of the Bankruptcy Code, 11 U.S.C. § 105, this Court is also charged that:

> No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process. *Id.* See *In re Hahn*, 200 B.R. 249 (M.D.Fla. 1997) and *In re Greene*, 127 B.R. 805 (Bankr. N.D.Ohio 1991) where those courts discuss the application of that section.

**6.** A bankruptcy petition filed with an intent to abuse the judicial process and to abuse the purposes of reorganization may evidence a lack of good faith on the part of the debtor. *Natural Land Corporation v. Baker Farms, Inc. (In re Natural Land Corporation)*, 825 F.2d 296, 298 (11th Cir.1987); *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Inc.)*, 749 F.2d 670, 674 (11th Cir.1984). Clearly Ms Steeley took whatever actions she believed were necessary to protect her interest in her home. But while the intended result of those actions is understandable, the process to reach that result must be questioned as that process appears to demonstrate an attempt to circumvent and to frustrate the very judicial process from which Ms Steeley now seeks indulgence. Thus the petition appears to be tainted. In that regard, this Court has a duty independent of that of the parties to prevent an abuse of process. The court's opinion in

cordance with *Waldron*, this Court must examine Ms. Steeley's motives to determine whether this case was filed in good faith.[7] Thereafter this Court must determine the proper venue of the case.[8]

> *In re Huerta,* 137 B.R. 356 (Bankr.C.D.Cal. 1992) explains:
>
>> The court has an independent duty to make a "considered assessment" of the debtor's good faith. *In re Warren,* 89 B.R. 87, 90 (9th Cir. BAP 1988) (citing *In re Goeb,* 675 F.2d 1386, 1390 (9th Cir.1982)). See also *In re Harris,* 132 B.R. 166, 170 (Bankr. S.D.Iowa 1989) (citing *In re Rimgale,* 669 F.2d 426, 431 (7th Cir.1982)); *In re Chaffin,* 836 F.2d 215, 216 (5th Cir.1988). Even if all the creditors of a proposed plan accept it, and even where no creditor opposes confirmation, the Court still has an independent duty to determine debtor's good faith. *Warren,* 89 B.R. at 90. "The good faith requirement is one of the central, perhaps the most important confirmation finding to be made by the court in any Chapter 13 case. Each case must be judged on its own facts." *In re Kull,* 12 B.R. 654, 658 (S.D.Ga.1981) (cited with approval in *Warren,* 89 B.R. at 90). Under the requirements of § 1325(b)(1)(B), "[t]he court should conduct more than a ministerial review related to payments in order that it may make an informed and independent judgment concerning whether a plan was proposed in good faith." *Warren,* 89 B.R. at 95.
>
> *Id.* at 366.

**7.** Many of the cases, other than *Waldron,* offering guidance of how to make a determination of whether a bankruptcy petition was filed in bad faith are cases filed under Chapter 11 of the Bankruptcy Code. This Court does not know of any reason to distinguish those cases from the present Chapter 13 case for purposes of that limited definition. In support, this Court notes that many courts have long recognized that even if the Bankruptcy Code does not specifically provide that the filing of a petition must be made in good faith, that in both Chapter 11 and Chapter 13 situations, a determination of a debtor's good faith at the time of filing a petition is the same determination as that of the debtor's good faith in proposing a plan of reorganization. *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Inc.),* 749 F.2d 670, 674 (11th Cir.1984) (Chapter 11 petition); *In re Bucco,* 205 B.R. 323, 324 (Bankr.M.D.Fla.1996) (Chapter 13 petition).

## III. Was this Case Filed in Bad Faith?

■ To decide whether the case was filed in good faith, *as a matter of law* this Court has applied the standards required by *Waldron.*[9] *Factually,* the Court has

**8.** Ms. Steeley's request along with Magna's oral *Motion to Transfer* the case to another division confirm that the parties believe that there is an issue of *venue* before this Court; however, this Court is not convinced that the issue of whether a case should be transferred from one division to another within the same district (where venue is proper) is an issue of *venue.* But because this Court does not have any other context in which to consider the peculiar circumstances of this case, a discussion of *venue* seems the most palatable and most productive.

**9.** While this Court believes that the general tests established by *Waldron* (and those of the cases of *Natural Land Corporation* and *Albany Partners* cited in note 6 above) are the appropriate tests to apply, this Court has, to the extent that facts are available, also considered the test described by the Court of Appeals for the Eleventh Circuit in *Kitchens v. Georgia Railroad Bank and Trust Co.,* 702 F.2d 885 (11th Cir.1983). That test is related to *Waldron.* The court's opinion *In re Armwood,* 175 B.R. 779, 784–85 (Bankr.N.D.Ga.1994) explains:

> Section 1325(a) of the Bankruptcy Code sets forth a good faith requirement in Chapter 13. Bankruptcy courts have a duty to preserve the bankruptcy process for its intended purpose and may dismiss a Chapter 13 case which is filed in bad faith. *Shell Oil Co. v. Waldron,* 785 F.2d 936 (11th Cir.1986). The standard for determining whether a petition is filed in good faith is a "totality of the circumstances" test. *Johnson v. Home State Bank,* 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991); *Jim Walter Homes, Inc. v. Saylors,* 869 F.2d 1434 (11th Cir.1989); *Kitchens v. Georgia Railroad Bank and Trust Co.,* 702 F.2d 885 (11th Cir.1983). The factors (the "*Kitchens* Factors*"*) to be considered in determining whether a petition was filed in good faith are:
>
>> 1. The amount of the debtor's income from all sources;
>> 2. The living expenses of the debtor and his dependents;
>> 3. The amount of attorney's fees;
>> 4. The probable or expected duration of the debtor's Chapter 13 plan;
>> 5. The motivations and sincerity of the debtor in seeking relief under the provisions of Chapter 13;

considered the above and the debtor's bankruptcy history, her options, and her actions.

## A. The Debtor's Bankruptcy History

■■■ Although the debtor wishes this Court to do so, the instant case cannot be considered independent of the debtor's previous cases, independent of the rulings made against her in her previous cases, or independent of the debtor's appeals of the rulings made against her in previous cases. In contrast, a detailed review of some of Ms. Steeley's prior cases is necessary, not only because Ms. Steeley asserts that the treatment she received in those prior cases is the basis for her contention that she should be afforded the special permission to, in effect, move her case from one division to another, but also because that same history establishes one basis for this Court's finding that Ms. Steeley is not entitled to such relief.[10]

6. The debtor's degree of effort;

7. The debtor's ability to earn and the likelihood of fluctuation in earnings;

8. Special circumstances such as inordinate medical expenses;

9. The frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors;

10. The circumstances under which the debtor has contracted debts and has demonstrated bona fides, or lack thereof, in dealings with creditors;

11. The burden which the plan's administration would place on the Trustee;

12. The extent to which claims are modified and the extent of preferential treatment among classes of creditors;

13. Substantiality of repayment to the unsecured creditors;

14. Consideration of the type of debt to be discharged and whether such debt would be nondischargeable under Chapter 7;

15. The accuracy of the plan's statements of debts and expenses and whether any inaccuracies are an attempt to mislead the court; and

16. Other factors or exceptional circumstances.

*Kitchens*, 702 F.2d 885.

In the event of serial petitions, to avoid dismissal on the grounds of bad faith, a debtor usually should be able to show a change in circumstances between the two filings. *In re Jones*, 105 B.R. 1007 (N.D.Ala.1989). A finding of bad faith does not require a finding of actual fraud, malice, scienter or an intent to defraud. *Waldron*, 785 F.2d 936 (11th Cir.1986). *Id.* As explained below, this Court finds, after considering *Waldron* and others, that the current case was filed in bad faith. Consideration of the *Kitchens* factors does not change that finding.

**10.** The parties agreed that the presentations at the hearing on these matters were argument and not evidence subject to cross examination. Much of the information this Court has considered however comes from this Court's own records. And while this Court may not infer the truth of all of the facts in the documents contained in those records, the Court may take judicial notice of those records, see Rule 201, Federal Rules of Evidence and *Board of Trustees of the Internal Improvement Trust Fund v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir.1975), and may take judicial notice of the documents in the debtor's file. See *Freshman v. Atkins*, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925) (court may take judicial notice of and give effect to its own records in another, but interrelated, proceeding, so that district court could take judicial notice of pendency of application for discharge in prior bankruptcy proceedings and thereby preclude discharge in a second voluntary proceeding in respect to the same debts as listed in first proceeding); *Cash Inn of Dade, Inc. v. Metropolitan Dade County*, 938 F.2d 1239 (11th Cir.1991) (district court may take judicial notice of public records within its files relating to particular case before it or to other related cases); *ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. 1981) (court may take judicial notice of its own records or of those of inferior courts); *Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260 (5th Cir.1978) (trial court did not err in taking judicial notice of materials in court's own files from prior proceedings); *Board of Trustees of the Internal Improvement Trust Fund v. Charley Toppino & Sons, Inc.*, 514 F.2d 700 (5th Cir.1975) (it is not error for a district court to take judicial notice of related proceedings and records in cases before that court); *Aloe Creme Lab., Inc. v. Francine Co.*, 425 F.2d 1295 (5th Cir.1970) (where it was contended on motion for summary judgment that issues had theretofore been decided adversely to plaintiff by reason of a judgment entered in another case brought by same plaintiff, district court had right to take notice of its own files and records, and had no duty to "grind the same corn a second time."); *Soley v. Star & Herald Co.*, 390 F.2d 364 (5th Cir.1968) (judicial notice of a court's prior

**428**

cases is permitted to support grant of a motion for summary judgment); *Ackermann v. United States*, 178 F.2d 983 (5th Cir.1949) (in motion to set aside judgment, court could take judicial notice of its own records in related litigation), *aff'd*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950). See also, *Job v. Calder (In re Calder)*, 907 F.2d 953 (10th Cir. 1990) (bankruptcy court properly took judicial notice of contents of debtor's Statement of Affairs and Schedule B–1 when denial of discharge was sought for making of false oath or account in or in connection with bankruptcy case); *Wilson v. Huffman (In re Missionary Baptist Found. of Am., Inc.)*, 712 F.2d 206 (5th Cir.1983) (a court may take judicial notice of the record in prior related proceedings and draw reasonable inferences therefrom); *Mann v. Shepard (In re Gervich)*, 570 F.2d 247 (8th Cir.1978) (bankruptcy court properly took judicial notice of bankrupt's verified schedule of creditors revealing that he was indebted at time agreement transferring property to him and his wife was entered into and that at least some of those debts were still owed at time petition in bankruptcy was filed); *Iit v. Lam (In re Colorado Corp.)*, 531 F.2d 463 (10th Cir.1976) (bankruptcy judge properly took judicial notice of files of court relating to the controversy as to whether claims of foreign creditors could be allowed for purposes of voting for trustee in bankruptcy); *Woodmar Realty Co. v. McLean (In re Woodmar Realty Co.)*, 294 F.2d 785 (7th Cir. 1961), *cert. denied*, 369 U.S. 803, 82 S.Ct. 643, 7 L.Ed.2d 550 (1962) (bankruptcy court was duty bound to take judicial notice of its records and files in cause, and *it was duty of reviewing court to take notice of facts which had come to its knowledge through records presented to it on several appeals in same case*).

The other "evidence" considered by this Court is of course the debtor's oral and written arguments and statements. Even if that information is not formal evidence, this Court must assume that the debtor is estopped from denying the truth of the information contained in those statements and arguments, and that she is estopped from asserting positions in this proceeding that would be different from the positions asserted in her other cases and proceedings. See *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257 (11th Cir. 1988) where the court discusses the rule of judicial estoppel. Judicial estoppel is a general rule, "directed against those who would attempt to manipulate the court system through the calculated assertion of divergent sworn positions in judicial proceedings." *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257, 1261 (11th Cir.1988), *quoting, Johnson Service Co. v. Transamerica Insurance Co.*, 485 F.2d 164, 174 (5th Cir.1973). "The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings." *American Nat'l Bank of Jacksonville v. F.D.I.C.*, 710 F.2d 1528, 1536 (11th Cir.1983). And the doctrine may apply, as *Chrysler Credit Corp. v. Rebhan* demonstrates, even if there is no showing of a calculated intent to mislead.

See *e.g., In re Vaniman International, Inc.*, 22 B.R. 166, 193–194 (Bankr.E.D.N.Y.1982) (parties who had previously contended that value of property was same as that testified to by mortgagee's expert in proceeding by mortgagee seeking relief from the stay, was judicially estopped from later insisting on a higher value in fraudulent conveyance action); *Mohen v. Mooney*, 205 A.D.2d 670, 614 N.Y.S.2d 737, 739 (N.Y.App.Div.1994) (purchasers were barred by doctrine of "estoppel against inconsistent positions" from adducing evidence at hearing to prove that property at issue was less valuable than their own expert had asserted in the context of an earlier motion for summary judgment); *McNellis v. McNellis*, 267 Mont. 492, 885 P.2d 412, 416 (1994) (husband was estopped in proceeding for distribution of marital assets from changing position regarding value of recycling machine investment, where, two days before hearing, husband filed answer to wife's discovery request assigning value to recycling machine, where husband did not seek to modify value at any time prior to hearing, and where husband did not indicate prior to hearing that he would present testimony contrary to his pretrial position); *State v. Waller*, 395 So.2d 37, 40 (Ala.1981) (state was not free to first introduce evidence of income approach to valuation in condemnation case, follow that with expert testimony that such theory was inappropriate to facts at hand and then object when condemnee offered identical evidence in attempt to show that such approach to valuation was proper method of calculating fair market value); *May v. Wilcox Furniture Downtown, Inc.*, 450 S.W.2d 734, 739 (Tex. Civ.App.1969) (where employee, under obligation to sell stock back to corporation, petitioned for audit to verify financial statement of companies and audit was prepared in accordance with established and accepted accounting principles and practices, employee who agreed to accept whatever amount proper audit would determine as book value was judicially estopped to take a different position than the one originally adopted after court-appointed auditor came up with the same book value figure as accountant for companies); *Bubis v. Blackman*, 58 Tenn.App. 619, 435 S.W.2d 492, 499 (1968) (parties who, when they were seeking specific performance of contract for sale of apartment, insisted that $406,000 which buyer proposed to pay was a fair and reasonable price for property in question, would not be allowed to contend, after

### 1. Case No. 86–05559

**Ms. Steeley's First Chapter 13 Case**

Ms. Steeley filed her first Chapter 13 case in the Eastern Division of this Court on July 21, 1986, as a joint case with her husband. That case, case no. 86–05559, was dismissed January 9, 1987.

### 2. Case No. 87–03471

**Ms. Steeley's Second Chapter 13 Case**

Ms. Steeley filed her second Chapter 13 case in the Eastern Division of this Court on April 16, 1987, also as a joint case with her husband. That case, case no. 87–03471, was dismissed on July 17, 1990.

### 3. Case No. 90–12916

**Ms. Steeley's Third Chapter 13 Case**

Ms. Steeley filed her third Chapter 13 case in the Eastern Division of this Court on April 13, 1990, also as a joint case with her husband.[11] The judge in that division entered an order of recusal and the case was transferred to the Southern Division of this Court on June 22, 1990. On July 2, 1990, the case was transferred to the Western Division.

On May 22, 1990, before the second transfer, Ms. Steeley filed a complaint against Life Insurance Company of Alabama, the mortgagee of her residence, the same residence that would become the subject of similar disputes in Ms. Steeley's fourth, fifth and sixth cases.[12]

On August 28, 1995 the Chapter 13 trustee filed a *Motion to Dismiss Case*. On September 25, 1995, the debtor filed a second complaint against Life Insurance Company of Alabama.

On October 3, 1995, the Western Division Court granted the trustee's motion to dismiss the case, dismissed the pending complaints and denied the debtors' motion for reconsideration of the matters involving the complaints.

### 4. Case No. 97–42508

**Ms. Steeley's Fourth Chapter 13 Case**

Ms. Steeley filed her fourth Chapter 13 case in the Eastern Division of this Court on August 5, 1997. On August 8, 1997, that case, case no. 97–42508 was transferred to the Northern Division.

On August 21, 1997 SouthTrust Bank filed a *Motion for Relief from Automatic Stay and Co–Debtor Stay* regarding a 1990 Thunderbird.

Also on August 21, 1997, Ms. Steeley filed a *Motion to Transfer Case* to the Southern Division of this Court. Ms. Steeley argued that a transfer was appropriate because her residence in Gadsden, Alabama and work place in Anniston, Alabama were closer to this Court's, Birming-

---

specific performance was refused and case was remanded for determination of damages for seller's breach of contract, that $475,000 was the fair market value of the property). *Cf., United States v. Bedford Assocs.*, 713 F.2d 895, 904–906 (2nd Cir.1983) (in action by tenant against landlord for breach of lease agreement, whether or not sufficient for invocation of judicial estoppel, assertions by tenant throughout earlier stages of litigation that fair annual rent of building was same as rental specified in lease agreement were admissions and thus were evidence from which court could fix fair annual rent relative to damages owing to tenant United States for loss of future value of its bargain with building owner).

11. Ms. Steeley's husband has since filed two individual cases in this District. Those are case no. 96–40349 and case no. 97–42032.

12. The debtor executed a mortgage with Life Insurance Company of Alabama on April 16, 1985, over one year prior to filing her first Chapter 13 petition. The property subject to that mortgage is the same property involved in disputes in this third case, as well as Ms. Steeley's fourth, fifth and sixth cases. But in relation to Ms. Steeley's first and second cases, although Ms. Steeley lists her residence in those cases as 709 Merit Springs Road (the same property subject to the Life Insurance Company of American mortgage), this Court is not able to determine from its records (due to the age of the cases) whether there were disputes about the property in those first two cases.

ham, Alabama location than the Northern Division's, Decatur, Alabama site. Ms. Steeley also argued for transfer because the law firms representing her creditors were based in the Southern Division. SouthTrust Bank filed a formal opposition to the transfer arguing that the case was related to the case of James Wesley Steeley, Jr. a/k/a Steelfax Systems, case no. 97–42032, a case of Ms. Steeley's husband's then pending in the Northern Division. The bank further argued that there were certain motions for relief from the stay that should be heard concurrently.

On October 2, 1997, the Northern Division Court entered an order denying SouthTrust's motion for relief from stay on the conditions that the debtor provide proof of insurance, make the vehicle available for inspection, cure any Chapter 13 plan payment arrearage and make all future plan payments. The Court denied the *Motion to Transfer Case.*

On November 12, 1997 the Court entered an *Order Dismissing Petition* based on the debtor's failure to continue proposed plan payments.

On November 20, 1997 Magna Mortgage Company filed a *Motion for Relief from Automatic Stay* regarding the debtor's residential real estate, the same property now subject to the mortgage held by Magna.[13] Magna argued that the debtor had a post-petition default of $4,574.38; that no postpetition payments had been made since the petition was filed; that there was no equity in the property; and that Magna was not adequately protected.

On November 20, 1997, Ms. Steeley filed a *Motion to Reconsider* the dismissal order. Ms. Steeley argued that she had made the plan payments; that direct pay-

ments had been made to creditors; and that she was not given notice of the possible dismissal or an opportunity to be heard on that matter.

On December 24, 1997 the Court entered an order denying the debtor's *Motion for Reconsideration.*

### 5. Case No. 98–40204

### Ms. Steeley's Fifth Chapter 13 Bankruptcy

Ms. Steeley filed her fifth Chapter 13 case in the Eastern Division of this Court on January 21, 1998. Along with her petition Ms. Steeley asked that court to retain "jurisdiction" of her case or that if a decision were made to transfer the case, that the transfer, for the convenience of all parties, be made to the Southern Division of this Court.

The case was transferred to the Northern Division of this Court on February 2, 1998. On March 25, 1998, in response to the transfer, Ms. Steeley filed a *Motion to Transfer Case or in the Alternative Motion for Recusal* with the Northern Division Court. In her motion Ms. Steeley argued that in her fourth case (similarly transferred from the Eastern Division to the Northern Division) she had made her required Chapter 13 payments but that her case was wrongly dismissed without an opportunity for hearing; that after dismissal no money was applied to her creditor's accounts or refunded to her; and that *the judge of the Northern Division Court was prejudiced against her because of a personal bias.* On March 25, 1998, the Northern Division Court denied the motion to transfer or recuse.

---

**13.** Magna Mortgage Company was formerly known as Magnolia Federal Bank for Savings. This Court is unable to determine how the interest now vested in Magna was acquired in relation to the interest of Life Insurance Company of Alabama described in the 1985 mortgage that appears in Ms. Steeley's third case. But without question, the same real estate involved in all of these cases is the debtor's

residence, that is 709 Merit Springs Road, or as is described in the mortgage between Life Insurance Company of Alabama and Ms. Steeley, "Lot Number Five (5) in Block Number Four (4) in Merit Hills Estates as recorded in Plat Book 'G', page 313, in the Office of the Judge of Probate of Etowah County, Alabama, and lying and being in Gadsden, Etowah County, Alabama."

On April 3, 1998, Magna Mortgage Company filed an *Objection to Confirmation* of Ms. Steeley's Chapter 13 plan. Magna argued, based on its interest in the same property involved in the debtor's fourth case, that the debtor's plan was not feasible; that its motion for relief filed in the debtor's fourth case was not heard simply because the 1997 case was dismissed; that when Ms. Steeley's fifth case was filed, Magna was in the process of foreclosing its interest in the subject real property; that Ms. Steeley's fifth case was filed in bad faith; and that the filing of that fifth Chapter 13 case constituted bad faith serial filings. On April 8, 1998, Magna filed a *Motion for Relief from Automatic Stay* seeking permission to proceed against the debtor's residence, again, the same property subject to the prior dispute in case numbers three and four and now subject to the same motion in case number six.

On April 10, 1998, SouthTrust Bank, the same secured creditor of Ms. Steeley's 1990 Ford Thunderbird, filed an *Objection to Confirmation* against Ms. Steeley's Chapter 13 plan. SouthTrust argued, based on its interest in the same property involved in the debtor's fourth case, that the filing of this fifth Chapter 13 case (along with the previous four) constituted bad faith serial filings; that the debtor was attempting to delay by seeking a transfer of the case; that the debtor was attempting to stall the process by asking for recusal of the Northern Division judge; that the debtor was attempting to combine the security in SouthTrust's claim to provide an automobile for her daughter; and that the debtor's plan was not feasible.

On April 10, 1998, SouthTrust Bank also filed a *Motion for Relief from Stay Imposed by Section 362 and by Section 1301 of the Bankruptcy Code by SouthTrust Bank of Alabama, N.A.* regarding its security in the 1990 Ford Thunderbird. The basis of the motion, in addition to the traditional relief from stay arguments, was the same as the bank's objection to confirmation.

On April 16, 1998 Ms. Steeley filed an *Objection to Claim* of SouthTrust Bank in which she contended that the claim was grossly excessive and contrary to the terms of the parties' agreement. On April 16, 1998 Ms. Steeley also filed her *Debtor's Response and Objection to Motion for Relief from Stay* regarding the Thunderbird. Ms. Steeley argued that some payments had been made; that the vehicle was necessary for her reorganization; that she had equity in the vehicle; and that she had provided proof of insurance. And on April 16, 1998 Ms. Steeley also filed her *Debtor's Response to Objection to Confirmation* filed by SouthTrust Bank. Ms. Steeley argued that the claim filed by SouthTrust was excessive; that she scheduled SouthTrust as a secured creditor; that she did not move for recusal but asked the Court to retain jurisdiction; and that her plan was feasible.

Similarly on April 16, 1998, Ms. Steeley filed her *Debtor's Response to Objection to Confirmation* (filed by Magna Mortgage Company.) She argued that the amount listed in her schedules was correct; that Magna did not give her credit for payments in the previous case; that her filing was not part of serial filings; and that her filing was not made in bad faith. Also on April 16, 1998, Ms. Steeley filed a *Motion to Strike* the motion for relief from stay filed by Magna. Ms. Steeley argued that the affidavit attached to Magna's motion was not signed and not notarized and that the affidavit was not complete. Ms. Steeley concluded that the affidavit was in violation of Rule 9011 of the Federal Rules of Bankruptcy Procedure and Rule 11 of the Federal Rules of Civil Procedure. On April 17, 1998, Magna filed a completed affidavit. On April 22, 1998, Ms. Steeley objected to Magna's motion for relief and filed a *Response and Objection to Motion for Relief from Automatic Stay*. Ms. Steeley argued that the arrearage amount was in dispute; that there was substantial equity in her home; and that Magna was adequately protected.

On May 12, 1998, the Court entered an *in rem* order granting SouthTrust's motion for relief from stay regarding the Thunderbird. The Court gave the bank permission to exercise its state law remedies and held that the Thunderbird could not be the subject of any future Chapter 13 case. The Court then found South-Trust's objection to confirmation to be moot.

Similarly on May 12, 1998, the Court entered an *in rem* order granting Magna's relief from stay as to Ms. Steeley's home. The Court gave Magna permission to begin foreclosure proceedings against the property and held that the same real estate could not be the subject of any future Chapter 13 case. The Court then found that Magna's objection to confirmation was moot.

On May 18, 1998, Ms. Steeley filed a *Motion for Reconsideration* of the order granting relief from the stay to Magna and a *Motion for Reconsideration* of the order granting relief from the stay to South-Trust. Both motions were denied on May 28, 1998. On May 28, 1998, Ms. Steeley filed notices of appeal of those orders and for the Court's denial of her motions for reconsideration.

In the interim, on May 15, 1998, the Chapter 13 Standing Trustee filed a *Trustee's Motion to Dismiss* Ms. Steeley's case. The trustee contended that Ms. Steeley had not begun to make her required plan payments. On June 2, 1998, Ms. Steeley responded with her *Debtor's Response to Trustee's Motion to Dismiss.* She argued that the trustee should withdraw his motion because her two principal secured creditors had been granted relief; that the orders granting relief to SouthTrust and Magna had been appealed; and that she was filing an amended plan.

On July 2, 1998, the Court denied the trustee's motion to dismiss on the conditions that the debtor cure the arrearage in her payments by paying $2,488.00 to the trustee by 2:00 p.m. on July 10, 1998, and by paying her July plan payment by 2:00 p.m. on July 10, 1998. The Court held that if the debtor failed to comply with either provision, that the Court would enter an order dismissing the case without further notice or hearing. On July 10, 1998 at 12:02 p.m., Ms. Steeley asked the Court to extend this deadline. The deadline was not extended and when Ms. Steeley did not meet the deadline, the Court dismissed her case on July 13, 1998.

On July 15, 1998, Ms. Steeley filed a notice of appeal of the dismissal order. On August 18, 1998, pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure, Ms. Steeley filed a *Motion for Stay Pending Appeals* of the Magna and South-Trust relief from stay orders and for the order dismissing her case. On August 19, 1998, the Northern Division Bankruptcy Court denied that motion.

On October 6, 1998 the United States District Court for the Northern District of Alabama affirmed the Bankruptcy Court's order granting Magna's motion for relief from stay. That court specifically found that the Bankruptcy Court did not abuse its discretion in ordering relief in favor of Magna, in denying the debtor-appellant's motion for reconsideration, or by holding that the debtor-appellant's real property could not be subject to any further bankruptcy cases filed by the debtor. The debtor filed an appeal of that District Court order to the Court of Appeals for the Eleventh Circuit on November 6, 1998.[14]

In contrast, on October 30, 1998, in separate orders, a different member of the

**14.** The records of the District Court and the Circuit Court do not contain any motion for a stay on appeal of the district court order. This Court assumes that none was requested and none entered. Consequently, because there is no stay of the district court order pending the current appeal, the "stay" operat-

ing in the *current bankruptcy case* is all (if it does exist) that prohibits Magna from pursuing its state law remedies. The prohibition is significant as the law in this Circuit is if a debtor does not obtain a stay pending appeal of a bankruptcy court order that has set aside the automatic stay as to a creditor's right to

United States District Court for the Northern District of Alabama reversed and remanded the Bankruptcy Court's order granting SouthTrust's' motion for relief from stay *and* the Bankruptcy Court's order dismissing the debtor's case. The District Court specifically found that the debtor was entitled to a hearing before the stay was lifted and was entitled to notice of a possible *in rem* order and a hearing on that issue. The case was then, in effect, reinstated.[15]

On November 10, 1998 Ms. Steeley asked the Bankruptcy Court to dismiss her then reinstated Northern Division case. The Court granted that motion the same day, but imposed a 180 day bar to refiling as allowed by 11 U.S.C. § 109(g).[16]

### 6. Case No. 98–05272

### Ms. Steeley's Sixth Chapter 13 Case

While the above-described appeals were in progress, and before her Northern Divi-

sion case was dismissed, Ms. Steeley filed the instant case, her sixth Chapter 13 case, on August 10, 1998. In contrast to previous filings however, Ms. Steeley filed this case in the Southern Division of this Court rather than the division of her residence, the Eastern Division. Along with her petition Ms. Steeley filed a *Motion to Retain Jurisdiction* asking this Court to keep the case and not to transfer it to another division. As stated above, in opposition, Magna Mortgage Company made, at the hearing on these matters on September 23, 1998, an oral *Motion to Transfer* the case.

In the interim and on August 25, 1998, Magna Mortgage Company filed a *Motion for Relief from Stay* seeking relief to proceed with foreclosure as allowed by the Northern Division Court in that Court's May 12, 1998 order.[17] Ms. Steeley filed an opposition to that motion on September 21, 1998.

On October 1, 1998, the Chapter 13 trustee filed an *Objection to Confirmation*

---

proceed in state court on a writ of foreclosure and a foreclosure occurs during the appeal, then the appeal is rendered moot by the foreclosure. *Lashley v. First Nat'l Bank of Live Oak (In re Lashley)*, 825 F.2d 362 (11th Cir. 1987), *cert. denied*, 484 U.S. 1075, 108 S.Ct. 1051, 98 L.Ed.2d 1013 (1988).

15. In regards to the case dismissal, the Bankruptcy Court's order was, as is commonly referred to, a "drop dead" order, that is the Bankruptcy Court entered an order requiring the debtor to make certain payments by a certain date or her case would be dismissed without further notice or hearing. When the debtor failed to make those payments, the Bankruptcy Court dismissed her case. The District Court found that a hearing was required before the dismissal.

As a result of the District Court's Order, the matters decided in Ms. Steeley's favor were remanded to the bankruptcy court. Upon receiving the District Court orders, *this* Division set the debtor's Southern Division case for a show cause hearing to determine why that case should not be dismissed because the debtor had then *two* pending Chapter 13 cases in the Northern District of Alabama. The Northern Division scheduled a final hearing on SouthTrust's Motion for Relief from Stay. While both matters were pending, the debtor, in an apparent choice of forums,

asked the Northern Division to dismiss case no. 98–40204. That request was granted and case no. 98–40204 was dismissed on November 10, 1998.

16. The Bankruptcy Court's injunction barring Ms. Steeley from filing another bankruptcy case for 180 days was issued pursuant to section 109(g)(2) of the Bankruptcy Code. That section allows a court to enter such a bar if, "the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title." 11 U.S.C. § 109(g)(2). Unfortunately for Ms. Steeley's creditors, the court's order was of course entered after the instant case was filed thereby creating a direct conflict between the intended relief section 109(g) and the legitimate relief provided by the automatic stay provisions of section 362.

17. As noted earlier, at the hearing on these matters, Magna asked the Court to continue any hearing on its motion for relief from stay until a time after decisions on the debtor's motion and Magna's oral motion to transfer were entered. Because Magna agreed to waive its section 362 right to a prompt decision on its motion, the Court agreed. Given the decisions the Court now reaches, this Court has not considered the motion.

*and Motion to Dismiss.* On October 13, 1998, Ms. Steeley filed an opposition to that objection and motion.

### B. The Debtor's Options

A debtor aggrieved by an order from a bankruptcy court has five options for review of that ruling. Those options are:

1. To ask the ruling court to alter or amend the ruling pursuant to Rule 59(a) of the Federal Rules of Civil Procedure (applicable to bankruptcy proceedings through Rule 9023 of the Federal Rules of Bankruptcy Procedure);

2. To ask the ruling court for a new trial pursuant to Rule 59(e) of the Federal Rules of Civil Procedure (applicable to bankruptcy proceedings through Rule 9023 of the Federal Rules of Bankruptcy Procedure);

3. To ask the ruling court for general reconsideration of the ruling pursuant to Rule 60(b) of the Federal Rules of Civil Procedure (applicable to bankruptcy proceedings through Rule 9024 of the Federal Rules of Bankruptcy Procedure);

4. To ask the ruling court for amended findings or for additional findings pursuant to Rule 52(b) of the Federal Rules of Civil Procedure (if the ruling was made in an *adversary proceeding,* applicable to bankruptcy proceedings through Rule 7052 of the Federal Rules of Bankruptcy Procedure); or

5. To file an appeal to the district court for the district in which the bankruptcy court is located pursuant to Rule 8001 of the Federal Rules of Bankruptcy Procedure.

■ In response to the Northern Division's rulings against her in her fifth case, Ms. Steeley selected several of the options including the fifth option and filed three appeals with the United States District Court for the Northern District of Alabama.[18] In addition however, Ms. Steeley created a sixth option, that is she filed her sixth Chapter 13 case in this Division, an action that provided Ms. Steeley with the exact relief she was unable to obtain otherwise, that is a *de facto,* (whether *de jure* or not), stay of all actions against her including a stay of the enforcement of the relief from stay order regarding her home.[19]

### C. The Debtor's Actions

As required by the law in this Circuit, this Court has examined the debtor's actions and questioned the debtor's motives.

**18.** Ms. Steeley did not obtain stays of the Bankruptcy Court's rulings pending those appeals or post bonds for the purpose of the appeals. And while this action would not ordinarily indicate a lack of good faith, when taken in conjunction with the filing of the instant case at the time those appeals were pending, this Court must conclude that another purpose of filing the bankruptcy case was to circumvent whatever appellate requirements the debtor failed to satisfy. Other courts have concluded that a debtor may not use the filing of a bankruptcy petition as a litigation tool, particularly where a debtor seeks to avoid posting a supersedeas bond. Such actions may in and of themselves constitute bad faith. See, *In re Ford,* 74 B.R. 934 (Bankr.S.D.Ala.1987); *In re Karum Group, Inc.,* 66 B.R. 436 (Bankr.W.D.Wash.1986); *In re Smith,* 58 B.R. 448 (Bankr.W.D.Ky.1986); and *In re Wally Findlay Galleries (New York), Inc.,* 36 B.R. 849 (Bankr.S.D.N.Y.1984).

**19.** Such an action, while seemingly innocent, is grossly unfair. As is discussed below, if a debtor fails to obtain a stay on appeal of an order granting "relief from stay," and a foreclosure occurs pending the appeal, the appeal in then moot. *Lashley v. First Nat'l Bank of Live Oak (In re Lashley),* 825 F.2d 362 (11th Cir.1987), *cert. denied,* 484 U.S. 1075, 108 S.Ct. 1051, 98 L.Ed.2d 1013 (1988). As a consequence, if a foreclosure operates against a debtor, that debtor may not then include any remaining right to redeem in any future Chapter 13 case. *Commercial Federal Mortgage Corp. v. Smith (In re Smith),* 85 F.3d 1555 (11th Cir.1996). The result, unlike the current situation, is that the debtor is left with only a redemption right that must be exercised outside of any federal jurisdiction.

## 1. Successive Cases

 Ms. Steeley's act of filing successive Chapter 13 cases may in and of itself constitute bad faith.[20] Ms. Steeley has filed six Chapter 13 cases, three within the last 13 months. This Court's records demonstrate that Ms. Steeley filed her fifth case less than 30 days after her motion for reconsideration of the dismissal of her fourth case was denied. And Ms. Steeley filed her sixth case less than 30 days after her fifth case was dismissed and at a time when an appellate court was considering that dismissal. The real estate subject to a motion for relief from stay in the current case is *the same real estate involved in the prior three cases,* and possibly all six cases. The same automobile involved in the current case is the same automobile involved in the prior two cases, and based on the appearance of SouthTrust at the hearing on this matter, probably the current case as well. This Court must conclude that Ms. Steeley is now, even if she were not in the past, attempting to avoid her responsibilities to her secured creditors.

## 2. *In Rem* Order

Ms. Steeley now faces an enforceable *in rem* order of the Northern Division Bankruptcy Court, affirmed by the United States District Court for the Northern Division of Alabama, which grants relief from the bankruptcy stay for Magna Mortgage, the mortgagee on Ms. Steeley's home. If the current case were not in place, Magna Mortgage certainly could have, and certainly would have, completed a foreclosure of the mortgaged property as there is no stay of the Bankruptcy Court's order granting Magna the right to do so. The consequences, in contrast to the current circumstances, are dramatic. First, because there is no stay pending appeal, a foreclosure during the appeal would of course, under the law in this Circuit, render the appeal moot.[21] Second, if a foreclosure were completed, under the law in this Circuit, Ms. Steeley would then be prevented from including the property and accompanying debt in any future Chapter 13, as a Chapter 13 debtor generally may not exercise a real property right of redemption through a Chapter 13 case.[22] Consequently, but for the current case, Ms. Steeley would have almost certainly been left with only a right to redeem her property, a right that she could not exercise in this Court. But in contrast, because of the current case, Magna has not attempted to foreclose the property and Ms. Steeley still holds full title to the property and has been able to stay the probable foreclosure for at least seven months.

## 3. Stay of Actions

Ms. Steeley's attempt to conjure up a new automatic stay by filing the current Southern Division case expanded her options beyond those allowed by law.[23] Her

---

**20.** See this Court's opinion in *In re Green*, 214 B.R. 503 (Bankr.N.D.Ala.1997).

**21.** If a debtor does not obtain a stay pending appeal of a bankruptcy court order that has set aside the automatic stay as to a creditor's right to proceed in state court on a writ of foreclosure, a foreclosure during the appeal renders the appeal moot. *Lashley v. First Nat'l Bank of Live Oak (In re Lashley)*, 825 F.2d 362 (11th Cir.1987), *cert. denied*, 484 U.S. 1075, 108 S.Ct. 1051, 98 L.Ed.2d 1013 (1988). Coincidentally, in *Albany Partners,* the court recognized that the debtor there did not obtain a stay pending appeal. 749 F.2d at 671, n. 1.

**22.** *Commercial Federal Mortgage Corp. v. Smith (In re Smith)*, 85 F.3d 1555 (11th Cir. 1996).

**23.** In *In re Graffy*, 216 B.R. 888 (Bankr. M.D.Fla.1998) a debtor filed a second Chapter 13 case without complying with the court's order to file tax returns in the first Chapter 13 case. The court found that the second case was filed in bad faith and for the purpose of circumventing the court's order. In *In re Fern Acres, Ltd.*, 180 B.R. 554 (Bankr. D.Neb.1995) the court held that the debtor should not be allowed to circumvent the dismissal of a bankruptcy case by obtaining a state court stay of a proposed foreclosure sale from a receiver and thereafter immediately

action was clearly calculated first to avoid the orders entered by the Northern Division of this Court and second to circumvent the effects of her failure to obtain a stay of those orders pending her appeals.

### 4. Voluntary Dismissal and Future Filings

Similarly, Ms. Steeley's most recent action of voluntarily seeking the dismissal of her last Northern Division case again not only allowed her to avoid her secured creditors but it also allowed her to avoid the orders of the bankruptcy court. When the Northern Division Court allowed the dismissal of Ms. Steeley's fifth case, the Court imposed an injunction barring Ms. Steeley from filing another bankruptcy case for 180 days.[24] The action was issued pursuant to section 109(g)(2) of the Bankruptcy Code, a section that allows a court to enter such a bar if, "the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title." 11 U.S.C. § 109(g)(2).[25] Unfortunately, that order, because of Ms. Steeley' filing of the current case and the dismissal of that case, is unenforceable as it was entered after the instant case was filed. Again Ms. Steeley has alluded her creditors, but now, in addition, she has alluded the orders of this Court.

### 5. Summary

██ As established by this Court's records of Ms. Steeley's six Chapter 13 cases, and her admission that the present case was filed to *have a chance in a fair and equitable court,* Ms. Steeley's actions demonstrate unmistakable manifestations of bad faith.[26] In summary, Ms. Steeley has

managed to avoid the collection efforts of her immediate creditors by filing her three most recent Chapter 13 cases within the last 13 months. She has managed to avoid the operation of the orders entered against her in her most recently dismissed case by filing the instant case. She has managed to avoid the Bankruptcy Court's denial of her requests for stays on appeals by filing the instant case and has managed to avoid enforcement of the District Court's order affirming the Bankruptcy Court's order lifting the stay on her home. She has managed to avoid the Northern Division's (then prospective) 180 day bar against filing another bankruptcy case by voluntarily dismissing that case after filing the instant case. And most recently, Ms. Steeley has managed to avoid the dramatic consequences of a sure foreclosure during her appeal to the Circuit Court where no stay on appeal has been granted during the pendency of that appeal.

### D. The Current Case was Filed in Bad Faith

This Court must preserve the integrity of the bankruptcy process by refusing to condone its abuse. Based on the above, the Court must conclude that Ms. Steeley filed the current case to seek relief from, and redress for, rulings from another division of this Court and to circumvent the stay and bond requirements of the appeal process. Consequently, this Court must conclude that Ms. Steeley's petition was not filed in good faith, but rather, was filed in bad faith and was "an intent to abuse the judicial process and the purposes of the reorganization provisions." *Albany Partners, Ltd. v. Westbrook (In re Albany*

---

filing another bankruptcy petition after that stay expired.

24. The Bankruptcy Court had little choice but to grant the voluntary dismissal of the Chapter 13 case. See 11 U.S.C. § 1307 which gives a debtor an absolute right to dismiss.

25. The motion for relief from stay pending at this time which satisfied the requirement of

Section 109(g) is the one revived due to the District Court's reversal of the Bankruptcy Court's order granting the SouthTrust motion.

26. "Unmistakable manifestations of bad faith need not be based upon a finding of actual fraud, requiring proof of malice, scienter or an intent to defraud." *Waldron* at 941.

*Partners, Inc.),* 749 F.2d 670, 674 (11th Cir.1984).

### E. May Ms. Steeley Cure Her Bad Faith Filing?

#### 1. Collateral Bar Rule

 The taint that pervades Ms. Steeley's filing is indelible and may not be cured by a collateral attack on the orders Ms. Steeley is attempting to avoid with the current filing. In *In re Novak,* 932 F.2d 1397 (11th Cir.1991) the Court of Appeals for the Eleventh Circuit described what has been termed the "collateral bar rule." For the Court, Chief Circuit Judge Gerald B. Tjoflat wrote:

It is well established that an order duly issued by a court having subject-matter jurisdiction over a case or controversy before it, and personal jurisdiction over the parties to that case or controversy, must be obeyed, regardless of the ultimate validity of the order. *Maness v. Meyers,* 419 U.S. 449, 459, 95 S.Ct. 584, 591, 42 L.Ed.2d 574 (1975); *United States v. United Mine Workers,* 330 U.S. 258, 293, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947); *United States v. Dickinson,* 465 F.2d 496, 509 (5th Cir.1972). Disobedience of an invalid court order may be punished as criminal contempt. As Chief Judge John Brown explained: *"People simply cannot have the luxury of knowing that they have a right to contest the correctness of the judge's order in deciding whether to willfully disobey it....Court orders have to be obeyed until they are reversed or set aside in an orderly fashion."* Dickinson, 465 F.2d at 509 (quoting *Southern Ry. v. Lanham,* 408 F.2d 348, 350 (5th Cir.1969) (Brown, C.J., dissenting from denial of rehearing en banc)).

*Id.* at 1400–1401 (footnotes omitted) (emphasis added).

Regardless of whatever injustice Ms. Steeley believes she suffered at the hands of members of this Court, her remedies lie within the processes provided by law, not through collateral attack. Many who have struggled with much worse have been held to the same standard. In *Walker v. City of Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967) the Supreme Court of the United States recognized that strict adherence to this principle was necessary even under circumstances that most would agree are intolerable. In *Novak* the Court of Appeals for the Eleventh Circuit summarized *Walker.* Chief Judge Tjoflat wrote:

In *Walker,* an Alabama trial court, on motion by city officials, enjoined a group of leading civil rights activists, including Dr. Martin Luther King, Jr., from marching through Birmingham during the forthcoming Easter weekend to protest against racial discrimination; the injunction was simply a judicial paraphrase of an existing municipal ordinance. Ignoring the order, the demonstrators marched as planned, without having taken any judicial steps to dissolve or overturn the injunction. As a result of their knowing disregard of the injunction, the court convicted the demonstrators of criminal contempt and sentenced them to five days in jail, plus a $50 fine. Although the Supreme Court recognized that the municipal ordinance on which the injunction was based raised substantial "constitutional issues," *id.* at 316, 87 S.Ct. at 1830, the Court nevertheless upheld the contempt convictions. Said the Court: The rule of law that Alabama followed in this case reflects a belief that in the fair administration of justice no man can be judge in his own case, however exalted his station, however righteous his motives, and irrespective of his race, color, politics, or religion....[R]espect for judicial process is a small price to pay for the civilizing hand of law, which alone can give abiding meaning to constitutional freedom. *Id.* at 320–21, 87 S.Ct. at 1832 (footnote omitted). Thus, "even in a case where the equities cut so dramatically in favor of the accused contemnors, the Supreme Court came down on the side of the orderly rule of law." *In re Establishment Inspection of Hern Iron Works,* 881 F.2d 722, 726 (9th Cir.1989).

*Id.* at 1401.[27] If Ms. Steeley is held to the same standard, the taint that pervades her petition is a taint that even good intentions cannot erase. She cannot collaterally attack the orders entered against her by circumventing the consequences of those orders.[28]

## 2. Initial Taint Remains

 Similarly, although Ms. Steeley had one good faith reason for filing this case (that is to protect her home from foreclosure) and may even be able to propose an acceptable plan (facts this Court has not considered), the Court of Appeals for the Eleventh Circuit has recognized that, "[t]he possibility of a successful reorganization cannot transform a bad faith filing into one undertaken in good faith." *Phoenix Piccadilly, Ltd. v. Life Insurance Co. of Virginia (In re Phoenix Piccadilly, Ltd.)* 849 F.2d 1393, 1395 (11th Cir.1988).[29] "It seems unquestionable to us that the taint of a petition filed in bad faith must naturally extend to any subsequent reorganization proposal...." *Natural Land Corporation* at 298.[30]

The combination of all of Ms. Steeley's actions convinces this Court overwhelm-

---

27. The Court of Appeals for the Eleventh Circuit appropriately recognized that there are exceptions to the collateral bar rule. Those exceptions include:

> First, if the issuing court lacks subject-matter jurisdiction over the underlying controversy or personal jurisdiction over the parties to it, its order may be violated with impunity. *In re Green*, 369 U.S. 689, 82 S.Ct. 1114, 8 L.Ed.2d 198 (1962); *Ex parte Fisk*, 113 U.S. 713, 718, 5 S.Ct. 724, 726, 28 L.Ed. 1117 (1885); *Dickinson*, 465 F.2d at 511. "In such a case, the original order is deemed a nullity, and the accused contemnor cannot be fairly punished for violating nothing at all." *In re Hern Iron Works*, 881 F.2d at 726–27. Second, the collateral bar rule presupposes that adequate and effective remedies exist for orderly review of the challenged ruling; in the absence of such an opportunity for review, the accused contemnor may challenge the validity of the disobeyed order on appeal from his criminal contempt conviction and escape punishment if that order is deemed invalid. *Dickinson*, 465 F.2d at 511. Third, the order must not require an irretrievable surrender of constitutional guarantees. See *Maness*, 419 U.S. at 460, 95 S.Ct. at 592; *Dickinson*, 465 F.2d at 511. In such a case, the only way to preserve a challenge to the validity of the order and repair the error is to violate the order and contest its validity on appeal from the district court's judgment of criminal contempt. Finally, court orders that are transparently invalid or patently frivolous need not be obeyed. *Id.* at 509; *In re Providence Journal Co.*, 820 F.2d 1342, 1347 (1st Cir.1986), modified, 820 F.2d 1354 (1st Cir.1987) (en banc; per curiam), cert. dismissed for lack of jurisdiction, 485 U.S. 693, 108 S.Ct. 1502, 99 L.Ed.2d 785 (1988). This exception is based, as is the first for jurisdictional defects, on the notion that "the right of the citizen to be free of clearly improper exercises of judicial authority" demands respect. *Id.*
> *Id.* at 1401–1402 (footnotes omitted). None of these exceptions apply to the instant matter.

28. As is described in the review of Ms. Steeley's prior cases, Ms. Steeley repeatedly made motions to retain jurisdiction or to transfer in an attempt to have her case heard in different divisions. When all of those attempts failed, all without appeals, Ms. Steeley circumvented the judicial process and filed her current case directly in the division she wanted. Clearly this collateral attack on otherwise enforceable orders cannot be condoned.

29. Courts disagree on the applicability of *Phoenix Piccadilly*. In that regard the court in *PNC Bank. National Association v. Park Forest Development Corp. (In re Park Forest Development Corp.)*, 197 B.R. 388 (Bankr. N.D.Ga.1996) wrote:

> Debtors have suggested that *Phoenix Piccadilly* should no longer be followed, either because the Supreme Court would reject a good faith filing requirement as inconsistent with the language of the Bankruptcy Code, or because the Bankruptcy Reform Act of 1994, by sanctioning single asset real estate bankruptcies, implicitly overruled *Phoenix Piccadilly*. Neither argument has merit. See *Trident Assocs. L.P. v. Metropolitan Life Ins. Co. (In re Trident Assocs. L.P.)*, 52 F.3d 127, 130–31 (6th Cir.), cert. denied, 516 U.S. 869, 116 S.Ct. 188, 133 L.Ed.2d 125 (1995); *In re Midway Investments, Ltd.*, 187 B.R. 382, 388–89 (Bankr.S.D.Fla.1995).
> *Id.* at 394, n. 1. This Court agrees with the above.

30. Even if this, or some other Court, were to find that there is a prospect of a successful

ingly that the latest petition was filed in bad faith. That consequence may not be avoided now. Ms. Steeley may not cure this bad faith filing.

### IV. What is the Proper Venue of this Case?

■■■ Ms. Steeley's motion asks this Court to retain jurisdiction of her case. The parties agree that Ms. Steeley's intended request was for this Court to recognize that the Southern Division of this District was the proper *venue* for the current case, not that Ms. Steeley was contesting the jurisdiction of this or any other division of this Court. Consequently, the parties also agree that this Court has jurisdiction over Ms. Steeley's case and that the issue before the Court is—what is the proper venue for this case.[31]

The proper venue of a bankruptcy case is defined by Section 1408 of Title 28 of the United States Code. That section reads:

> Except as provided in section 1410 of this title, a case under title 11 may be commenced in the district court for the district—
>
> (1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or

> (2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

11 U.S.C. § 1408.[32]

The movant does not argue that the Southern Division of this Court is not *one* of the proper venues for this case, only that this Division is not *the* proper venue for the case.

Clearly under the law in this Circuit, matters may be properly filed in one location but for some reason should be transferred to another.[33] In this regard, and based on the facts, this Court finds that the Northern District of Alabama is the proper venue for the case; consequently, the only remaining issue is whether a transfer to another division is proper. To make that determination this Court must first consider Section 1412 of Title 28 of the United States Code. In *A.B. Real Estate, Inc., SNA, Inc. v. Bruno's, Inc. (In re Bruno's, Inc.)*, 227 B.R. 311 (Bankr. N.D.Ala.1998) another member of this Court explained:

> Section 1412 provides that a district court may transfer a case or proceeding "under Title 11" to a district court for another federal district, *"in the interest of justice or for the convenience of the parties."* Because the criteria under § 1412 is phrased in the disjunctive, the bankruptcy case or proceeding is transferrable upon a sufficient showing of either the interest of justice or for the convenience of the parties. *In re Toxic Control Technologies, Inc.*, 84 B.R. 140 (Bankr.N.D.Ind.1988). Transfer of venue under § 1412 requires a case-by-case analysis that is subject to broad discretion of the court. The party seeking the change or transfer of venue has the burden to show that transfer is

---

reorganization by this debtor, such a finding would not override, as a matter of law, a finding of bad faith. *Phoenix Piccadilly, Ltd. v. Life Insurance Co. Of Virginia (In re Phoenix Piccadilly, Ltd.)*, 849 F.2d 1393 (11th Cir. 1988).

**31.** See note 8 above.

**32.** Section 1410 does not apply.

**33.** See *A.B. Real Estate, Inc., SNA, Inc. v. Bruno's Inc. (In re Bruno's, Inc.)*, 227 B.R. 311 (Bankr.N.D.Ala.1998).

appropriate and further must do so by a preponderance of the evidence.

*Id.* at 323–24 (footnotes omitted) (emphasis added).

Section 1412 reads, "A district court may transfer a case or proceeding under title 11 to a district court for another district, *in the interest of justice or for the convenience of the parties.*" [34]

For purposes of a transfer from one division to another, this Court's Local Bankruptcy Rule 1014–1 provides, Transfer between divisions when requested by the debtor or a party in interest shall be governed by the same principles as govern transfers between districts as set out in Rule 1014 of the Bankruptcy Rules, except as otherwise provided in Local Bankruptcy Rule 1073–1. N.D.Ala.L.Bankr.R. 1014–1. Rule 1014 of the Federal Rules of Bankruptcy Procedure *contains the same standard as Section 1412.* That rule provides in part:

> Cases filed in Proper District—If a petition is filed in a proper district, on timely motion of a party in interest, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, the case may be transferred to any other district if the court determines that the transfer *in the interest of justice or the convenience of the parties.*

Fed.R.Bankr.P. 1014.[35]

The parties appear to agree that "convenience of the parties" is better served in this Division. This Court agrees. In regard to the "in the interest of justice" alternative standard, the parties certainly disagree. Ms. Steeley believes that she has been treated unjustly. Magna be-

---

**34.** The court in *A.B. Real Estate, Inc., SNA, Inc. v. Bruno's Inc. (In re Bruno's, Inc.),* 227 B.R. 311, 322–23 (Bankr.N.D.Ala.1998), explained the difference between the "general" transfer of venue statute and the "specific" bankruptcy statute. The distinction the court made between cases removed to federal court and those pending in federal court applies to the instant situation. In *Bruno's* the Court wrote:

> Most of the published decisions regarding transfer of venue for a bankruptcy proceeding cite two different statutes for such authority. Some courts have determined that the general change of venue statute for civil actions pending in district courts, 28 U.S.C. § 1404(a), applies to a request for transfer of a bankruptcy proceeding that is "related to" the bankruptcy case. They reason that because 28 U.S.C. § 157(a) distinguishes between proceedings "arising under Title 11," "arising in a case under Title 11" and those "related to a case under Title 11," "related to" proceedings are not proceedings "under Title 11" and therefore are governed by the general change of venue statute, 28 U.S.C. § 1404(a).
> However, most courts look to 28 U.S.C. § 1412 (1994) for authority to determine the outcome of a motion to transfer venue of a cause of action removed to the bankruptcy court. This Court agrees that the appropriate authority for transfer of bankruptcy proceedings is 28 U.S.C. § 1412 for two reasons. First, the plain language of § 1412 states that it applies to a change of venue concerning a case or proceeding under Title 11 (the Bankruptcy Code), while the language in § 1404(a) refers only to a "civil action" and fails to mention language peculiar to bankruptcy jurisdiction and venue statutes, including "case," "proceeding" and "Title 11." Second, Rule 7087 of the Federal Rules of Bankruptcy Procedure which governs adversary proceedings of state actions removed to bankruptcy court pursuant to 28 U.S.C. § 1452, references 28 U.S.C. § 1412, not § 1404(a). See *In re Storage Equities, Inc.,* 91 B.R. 616, 619 (N.D.Ga.1988); 1 Collier on Bankruptcy P 4.04[4][a] and [b] (15th ed. rev.1996). Accordingly, this Court finds that 28 U.S.C. § 1412 is the applicable change of venue statute for determining whether a transfer of proceedings related to the bankruptcy case is appropriate.

> *Id.* (footnotes omitted).

**35.** Neither party contends that this case was filed in an improper district and therefore subsection (a)(2) of Rule 1014 that governs the transfer of such cases does not apply. Unlike subsection (a)(1) that subsection allows for the dismissal, as well as the transfer, of a case. Because the current case was filed in a proper district, that option, at least as to venue, is not available. Similarly there are no contentions that the oral motion before the court was not timely or that notice and a hearing were not afforded the debtor. In fact, the debtor's motion is the vehicle for this Court's consideration of venue.

lieves that for this Court to confirm Ms. Steeley's action would be unjust.

The court in *In re Bruno's, Inc.* discussed what the factors should be consider in applying the "interest of justice" standard. That Court wrote:

> The "interest of justice" prong is "a broad and flexible standard which must be applied on a case-by-case basis." *Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products Corp.)*, 896 F.2d 1384, 1391 (2d Cir.1990). Some courts have held that the most important factor to be considered in determining whether to transfer venue of a bankruptcy proceeding under the interest of justice prong is whether transfer would promote the economic and efficient administration of the bankruptcy estate. Different courts have applied different factors to determine what is in the interest of justice for resolving a change of venue request. Having considered the factors in those cases, this Court finds the following factors applicable:
>
> (a) Economics of estate administration
> (b) Presumption in favor of the "home court"
> (c) Judicial efficiency
> (d) Ability to receive a fair trial
> (e) The state's interest in having local controversies decided within its borders, by those familiar with its laws
> (f) Enforceability of any judgment rendered
> (g) Plaintiff's original choice of forum.

*Id.* at 324–25 (footnotes omitted).

This Court has considered the factors listed above. The majority weigh in favor of transfer. The estate will be administered more efficiently by a division familiar with these matters; there is no "home court" presumption as this matter does not involve a removed state court civil action; the entire court system and the litigants will benefit if a division familiar with this matter directs this case; while the debtor does not believe this to be true, she has no less reason to receive a fair trial in one division of this Court than another, but even if she believes she does, as she knows, the appellate process stands to protect her rights; there is no state interest that affects this matter; any Division of this Court may enforce any order issued from any other division of this Court, therefore Ms. Steeley's choice of this Division should not be given any weight at this time.

In addition to the above, and more importantly in regards to the particular circumstances of the pending matters, this Court has also considered the standard of "in the interest of justice" in the light of this Court's finding that this case was filed in bad faith. In that regard, without question, the "interest of justice" would not be served if the debtor is allowed to remain in this Division. While "venue" may be proper in more than one division, *justice* is not proper in this Division at this time. As this Court has already found that the filing of the petition in this Division was "an intent to abuse the judicial process," the Court must now find that "in the interest of justice" this case must, at a minimum, be transferred.

## V. Disposition

Because this case was filed in bad faith and the division in which it was filed is not the proper venue for the case, what then is to become of the case? As Judge Tjoflat wrote in *Novak*, "People simply cannot have the luxury of knowing that they have a right to contest the correctness of the judge's order in deciding whether to willfully disobey it. . . . Court orders have to be obeyed until they are reversed or set aside in an orderly fashion." *Id.* at 1400–1401 (quoting *Dickinson*, 465 F.2d at 509) (quoting *Southern Ry. v. Lanham*, 408 F.2d 348, 350 (5th Cir.1969)).

On one hand, ample legal and factual support exists both for dismissal or for granting the movant's pending (but as of yet litigated) *Motion for Relief from*

*Stay.*[36] Clearly the case was filed to circumvent orders entered in prior cases, to circumvent consideration of those orders on appeal, and to circumvent the failure of the debtor to obtain a stay of those orders on appeal. However, equally clear is, that but for the Chapter 13 trustee's late filed motion to dismiss, no one has asked that this case be dismissed, and no hearing on dismissal has been conducted. And while this Court may have authority to dismiss a bad faith filing *sua sponte,* this Court does not choose to do so here.[37]

On the other hand, Ms. Steeley is not entitled to avoid the rulings of any division of this Court, or the effects of the results of *her own appeals* of those orders, or the orders of any appellate court, by filing a case in this Division and voluntarily dismissing her Northern Division case, and then collaterally attacking the orders complained of. If this case is not to be dismissed, at a minimum, Ms. Steeley should be placed in the position she should have been in if she had filed this case in the proper division, the Eastern Division of this Court, the division of her residence.

Consequently, this Court believes that in the name of justice, the debtor may not be rewarded for her conduct and that this case must be transferred to the Eastern Division of this Court.[38] If a potential conflict still exists between the judge of that division and Ms. Steeley, and recusal is necessary, the clerk of this Court must reassign the case.[39]

This Court has found that the current case was filed in bad faith, bad faith that exists *because the case was filed intentionally for the purpose of avoiding the law.*[40]

---

**36.** A debtor's lack of good faith may constitute cause for dismissal of a bankruptcy petition. *In re Moog,* 159 B.R. 357, 360 (Bankr. S.D.Fla.1993) (citing *In re Albany Partners,* 749 F.2d 670 (11th Cir.1984)). And a petition filed in bad faith justifies relief from the automatic stay. *Barclays–American/Business Credit, Inc. v. Radio WBHP, Inc. (In re Dixie Broadcasting, Inc.),* 871 F.2d 1023, 1026 (11th Cir.1989) (citing *In re Natural Land Corp.,* 825 F.2d 296 (11th Cir.1987), *cert. denied,* 493 U.S. 853, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989)). However no hearing has been held on the motion, and thus that motion may not be granted.

**37.** A bankruptcy court may act *sua sponte* in raising dismissal of a Chapter 13 case. See *In re Hahn,* 200 B.R. 249 (Bankr.M.D.Fla. 1997); *In re Greene,* 127 B.R. 805 (Bankr. N.D.Ohio 1991).

**38.** See *In re Henderson,* 197 B.R. 147 (Bankr. N.D.Ala.1996) where the Eastern Division of this Court discussed venue and transfer.

**39.** As stated above, Local Bankruptcy Rule 1014–1 provides, Transfer between divisions when requested by the debtor or a party in interest shall be governed by the same principles as govern transfers between districts as set out in Rule 1014 of the Bankruptcy Rules, except as otherwise provided in Local Bankruptcy Rule 1073–1. N.D.Ala.L.Bankr.R. 1014–1. Local Rule 1073–1(b) directs:

*Assignment of Cases Filed in Another Division.* Any bankruptcy division office of this district may accept for filing, on behalf of any other bankruptcy division office of this district, an original petition and accompanying documents under any chapter of the Bankruptcy Code. Upon such filing, the division office where the petition is accepted for filing shall immediately obtain, by telephone, a docket number for the new petition from the division office to which said case was assigned. That docket number shall be written on the new petition and all other documents filed with it. As soon as possible, the documents shall be forwarded to the division office for the division to which said case has been assigned.

N.D.Ala.L.Bankr.R. 1073–1(b).

Local Rule 1014–1 apparently presupposes that the filing in a particular division was proper and that only because a request to transfer the case to another division within this District would the court consider the standards of Rule 1014 of the Federal Rules of bankruptcy Procedure. Otherwise, if the case were filed in an improper division, then Local Rule 1073–1(b), which provides the procedure for the transfer of a case filed in an improper division, would control. Magna's oral *Motion to Transfer* relieves this Court of having to decide what would be the proper division of a case filed in an improper division where no one objected to that filing.

**40.** Had the debtor filed this case in the proper division, none of the matters before this Court would have arisen and the time and effort by the Court and the parties could have been spent on the substantive issues that clearly need attention. If this case had been filed in

After transfer of this Case, if the judge of the Eastern Division retains the case or if after compliance with the procedures called for in this Court's Local Rules regarding reassignment of cases and this case is properly reassigned, the member of this Court receiving the assignment may, if asked to do so, decide the effect of the pending case on the now affirmed *in rem* order lifting the stay as to the mortgagee on Ms. Steeley's home.[41] Or that member

the Eastern Division and a recusal was instituted, the clerk could simply have transferred the case to another division and the court there could have proceeded with the substantive matters necessary for the adjudications of all parties' rights. Such a filing would not have, of course, provided Ms. Steeley with the delay concomitant with an improper filing.

41. See *Jefferson v. Mississippi Gulf Coast YMCA, Inc.*, 73 B.R. 179, 182 (S.D.Miss.1986) (bankruptcy court did not err in holding that the automatic stay did not operate to bar foreclosure proceedings where an order was entered lifting the stay and allowing a sale to proceed in a previous bankruptcy involving the same debtors, the same creditors and the same property); *In re Keller*, 1996 WL 590877 at *2 (E.D.Pa., Oct. 10, 1996) (bankruptcy court properly dismissed chapter 12 case with prejudice and granted prospective relief from the automatic stay, where debtor filed a pro se chapter 11 case on November 21, 1996 for purpose of staying a foreclosure sale scheduled that day, that case was dismissed on December 12, 1995, the foreclosure sale was rescheduled for January 23, 1996, the debtor filed an emergency application with the state court to stay the sale and vacate the foreclosure judgment on January 19, 1996, the application was denied by the state court, the debtor then filed a pro se chapter 12 bankruptcy petition which was dismissed on March 4, 1996, the secured creditor then scheduled a third foreclosure sale for April 16, 1996, and the debtor filed another pro se chapter 12 petition on April 14, 1996); *Norton v. Hoxie State Bank*, 61 B.R. 258, 261 (D.Kan.1986) (where debtors filed chapter 13 case prior to dismissal of their previously filed chapter 11 case but after relief from the stay had been granted to secured creditor in the chapter 11 case, bankruptcy court properly provided in order dismissing chapter 11 case that the lift of the automatic stay granted to the secured creditor in the Chapter 11 case would remain in full force and effect in the Chapter 13 case); *Smith v. First Federal Savings and Loan Ass'n of Carnegie (In re Smith)*, 58 B.R. 603, 605 (W.D.Pa.1986) (bankruptcy judge properly granted relief from the stay ex parte on day that debtors filed third bankruptcy petition, where petition was filed immediately prior to a scheduled foreclosure sale, debtors had filed two prior bankruptcy cases immediately prior to scheduled foreclosure sales, first bankruptcy case was dismissed for bad faith, second bankruptcy case was dismissed for failure to the necessary documents, and third filing was clear violation of section 109(f) so that the debtor had no standing to claim any bankruptcy relief and therefore had no right to the automatic stay achieved by mere filing).

See also *In re Yimam*, 214 B.R. 463, 467 (Bankr.D.Md.1997) (where debtor or spouse had filed seven Chapter 13 petitions to prevent foreclosure sale of residence and not made a mortgage payment in five years, and plan filed by debtor was futile because he had insufficient income to make both the current mortgage payments and plan payments, bankruptcy court would create "equitable servitude" whereby filing of new bankruptcy petition by debtor or spouse within specified period would not extend automatic stay's protection to their residence and would not interfere with any foreclosure proceeding then pending or thereafter filed); *In re Hric*, 208 B.R. 21, 26 (Bankr.D.N.J.1997) (prospective automatic stay relief was warranted where debtors' right to cure default in mortgage under section 1322 was terminated prior to filing of second chapter 13 case by foreclosure sale conducted pursuant to relief from stay granted in prior chapter 13 case, so that it would be an abuse of the bankruptcy process for the debtors or any purported successors in interest to delay their removal from the property by any future bankruptcy filings); *In re Greenberg*, 200 B.R. 763, 770 (Bankr.S.D.N.Y.1996) (chapter 13 debtor-tenant-shareholder's motion to dismiss would be granted, but with provision that, if debtor filed another bankruptcy case, automatic stay would not apply to current state court litigation between debtor and co-operative apartment owner, or to co-op's right to foreclose its security interest or evict debtor).

See also *In re Felberman*, 196 B.R. 678, 684 (Bankr.S.D.N.Y.1995) (prospective annulment of stay previously granted by bankruptcy court in dismissing third successive Chapter 13 case filed by debtor's husband was enforceable against wife in Chapter 13 case filed after the dismissal of her husband's third case, and one day before the fourth foreclosure sale scheduled by the secured creditor, even though debtor was not herself party to husband's earlier bankruptcy filings, where debtor and husband had defaulted on mortgage five years after it was executed, the last

may decide the effect of the current case's automatic stay (if any exists) on that *in*

monthly payment made by them to the mortgagee was four and a half years prior to filing of wife's Chapter 13 case, debtor and husband were fifty-three months in arrears, and debtor's husband had filed three prior Chapter 13 cases on the eve of foreclosure sales within a span of 2 years, each of which had been dismissed); *In re Jones*, 1990 WL 300921 at *2 (Bankr.N.D.Ind., Sept. 13, 1990) (prospective relief from automatic stay in subsequently filed cases was warranted where debtor had filed five previous bankruptcy cases, each on the eve of foreclosure, and where order dismissing the fifth case specifically barred debtor from filing bankruptcy for period of one year; *Abdul–Hasan v. Firemen's Fund Mortgage, Inc. In re Abdul–Hasan)*, 104 B.R. 263, 266 (Bankr.C.D.Cal.1989) (order for relief from stay granted in prior Chapter 13 case, which by its terms was made effective in any bankruptcy case subsequently filed by the same debtor, relieved mortgagee of any responsibility to seek relief from automatic stay prior to holding of foreclosure sale after subsequent bankruptcy case was filed by debtor); *Jefferson v. Mississippi Gulf Coast YMCA, Inc., (In re Jefferson)*, 59 B.R. 707, 709 (Bankr. S.D.Miss.1986) (secured creditor was not prevented by automatic stay from foreclosing on debtor's property where bankruptcy court had previously terminated stay in connection with previous Chapter 13 case to allow foreclosure to proceed), *aff'd*, 73 B.R. 179 (S.D.Miss. 1986).

42. Whether a section 362 stay of the bankruptcy court's *in rem* order in favor of Magna arose when the instant case was filed and, if it did, whether that stay continued to bar operation of the district court's affirmation of that order, are debatable questions. In many similar circumstances court have navigated that maze by considering an alternative issue. That issue is, if there were a stay, may the court annul that stay?

As described in *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670 (11th Cir.1984), the Court of Appeals for the Eleventh Circuit Court of Appeals held that " § 362(d) permits bankruptcy courts, in *appropriately limited circumstances*, to grant retroactive relief from the automatic stay" by annulling the stay *ab initio.* 749 F.2d at 675 (emphasis added). Such an act by a bankruptcy court would have the effect of annulling the stay to validate actions taken during the pendency of the stay. *Id.* In *Albany Partners*, the court affirmed the bankruptcy court's annulment of the stay to validate a post-petition foreclosure sale where the debtor's Chapter 11 petition was filed in bad faith even though the creditor knew about the

*rem* order.[42] Or that member may decide

bankruptcy case when the foreclosure sale was consummated.

Many courts have discussed what appropriately limited circumstances compel such retroactive relief. In *Jones v. Garcia (In re Jones)*, 63 F.3d 411 (5th Cir.1995), *cert. denied*, 517 U.S. 1167, 116 S.Ct. 1566, 134 L.Ed.2d 666 (1996), the court held that the bankruptcy court correctly granted retroactive relief from the stay to validate a postpetition foreclosure sale where the mortgagees lacked either notice or constructive knowledge of the filing of the debtors' Chapter 13 petition. In *Jones*, the debtors purchased real property and gave a promissory note secured by a mortgage on the property. The debtors defaulted on the note and the mortgagees instituted foreclosure proceedings. In response, the debtors filed a petition under Chapter 13. The foreclosure was thus stayed. The debtors thereafter resumed making payments but again defaulted on the note.

The debtors' Chapter 13 case was subsequently dismissed but within a few days later the debtors filed a second Chapter 13 petition. They did not however, notify the mortgagees of the second petition. Unaware of the new bankruptcy proceeding the mortgagees continued with the foreclosure and purchased the property at the foreclosure sale. Sometime thereafter counsel for the mortgagees was notified of the new Chapter 13 filing and the mortgagees sought authority from the bankruptcy to pursue eviction of the debtors. The debtors claimed that the foreclosure sale was void because it occurred after the second bankruptcy filing. The bankruptcy court granted retroactive relief from the stay to the mortgagees for the purpose of validating the foreclosure sale and the district court affirmed. In affirming the decision of the district court, the Court of Appeals for the Fifth Circuit found:

Given the fact that the Garcias, who are not commercial lenders, received neither actual nor presumed constructive notice of the Joneses' bankruptcy filing until after title had transferred to them, we perforce conclude that there was neither error nor an abuse of the discretion afforded the court by section 362(d).

63 F.3d at 413.

In *Weyerhaeuser Mortgage Co. v. Hallett (In re Hallett)*, 1995 WL 506838 (Bankr.E.D.Va., March 3, 1995), foreclosure of a mortgage on the debtor's home was scheduled for January 3. The debtor filed a Chapter 13 bankruptcy petition on Friday, December 30, at 3:46 p.m. The debtor's representative called the foreclosure trustee at 4:15 p.m. on that Friday and left a message with a receptionist stating that

the debtor had filed a bankruptcy petition. The representative did not however, mention the pending foreclosure sale.

At the time of the call, the foreclosure trustee was away for the three-day New Year's weekend. On January 3, the next business day after the filing of debtor's petition, the foreclosure trustee went directly to the site of the foreclosure and conducted the sale. The debtor did not appear at the foreclosure sale and took no additional steps to notify the foreclosure trustee of the bankruptcy filing. The foreclosure trustee did not learn of the filing until he returned to the office later that afternoon.

Because the debtor had filed five bankruptcy petitions in less than three years, most of them on the eve of foreclosure, the court held, based also on the debtor's failure to give notice to the foreclosure trustee, that annulment of the stay was warranted.

A similar result was reached in *Weltman v. Independence Sav. Bank*, 1990 WL 96087 (S.D.N.Y., July 3, 1990), *aff'd*, 927 F.2d 593 (2nd Cir.1991), *cert. denied*, 500 U.S. 957, 111 S.Ct. 2269, 114 L.Ed.2d 721 (1991). In *Weltman* the debtor filed a Chapter 13 bankruptcy petition in the Eastern District of New York, the location of his residence. That Chapter 13 case was converted to Chapter 7. The bankruptcy court entered an order vacating the automatic stay and directed that the vacation of the stay remain in effect in all cases subsequently filed by the debtor. The debtor's case was thereafter dismissed for failure to file schedules.

After the dismissal, the debtor filed a Chapter 11 bankruptcy petition in the Southern District of New York, the location of his principal place of business. The debtor sought an injunction against a pending foreclosure of the mortgage on his residence. The bankruptcy judge denied the injunction. The foreclosure was consummated and the bankruptcy judge entered an order providing that no automatic stay affecting the foreclosure proceeding arose by the Chapter 11 filing because of the Eastern District order in the Chapter 7 case, but that, if an automatic stay had come into being despite the Eastern District order, such automatic stay was annulled. The debtor appealed.

The question on appeal was, according to the district court, whether the Southern District bankruptcy judge was justified in annulling the stay which arose from the debtor's Southern District filing. The district court ruled that the bankruptcy court appropriately annulled the stay based on its findings that the mortgagee was not adequately protected, that the debtor had no equity in the property, and that the property was not necessary for reorganization. The district court rejected the argument that an expressed finding of bad

faith is a prerequisite to retroactive relief from the stay and found, based on the Eastern District order of dismissal, that the bankruptcy judge in the Southern District case appropriately exercised his prerogative to annul the stay, based on equitable principals. The court wrote, "Bankruptcy courts have broad equitable powers to protect creditors from unwarranted liability arising from application of the automatic stay." 1990 WL 96087 at *2.

*In re Siciliano*, 13 F.3d 748 (3rd Cir.1994), a foreclosure sale after default by the debtor on the payments due on a note secured by a mortgage on his home was scheduled. Three days before the sale, the debtor filed his first Chapter 13 bankruptcy petition. After filing his petition, the debtor failed to make several post-petition mortgage payments. The mortgagee filed a motion for relief from the automatic stay. An order was entered by the bankruptcy court providing that the mortgagee could proceed with foreclosure if the debtor defaulted again on payments but that the mortgagee had to provide the debtor with notice and a five-day cure period before proceeding. The debtor defaulted again and the bankruptcy court entered a subsequent order granting the mortgagee relief from the automatic stay. Several months later, the debtor's bankruptcy case was dismissed.

In the meantime, the mortgagee had renoticed the foreclosure sale. Three days before the sale, and only 20 days after the dismissal of his first case, the debtor filed his second Chapter 13 bankruptcy petition. Despite the new filing, the foreclosure sale proceeded as scheduled as the mortgagee did not become aware of the second petition until after the sale. The mortgagee filed a motion for relief from the automatic stay. While the motion was pending, the bankruptcy court dismissed the second Chapter 13 petition because of the debtor's failure to file required documents and dismissed the motion for relief from the stay as moot. On motion of the debtor, the bankruptcy court held the foreclosure sale was void. The mortgagee filed a motion to reconsider the order and for retroactive relief from the automatic stay in order to validate the foreclosure sale.

The bankruptcy court denied the motion on the grounds that the debtor had not exhibited any bad faith to warrant an annulment of the stay and the district court affirmed. The Court of Appeals for the Third Circuit reversed, holding that the bankruptcy court had the authority to validate the foreclosure sale by annulling the automatic stay if the conditions of 11 U.S.C. § 362(d)(2)(A) or (B) were met. The circuit court remanded the case with instructions that the bankruptcy court should grant retroactive relief if the debtor lacked equity in the property. The Circuit Court instructed, "Given these factors, upon

Prudential's request for relief under § 362(d), the bankruptcy court must consider whether Siciliano had an equity in the property and if not, grant appropriate relief to Prudential. For the reasons stated above, appropriate relief could include annulling the stay and validating the sheriffs sale." 13 F.3d at 752.

In *National Environmental Waste Corp. v. City of Riverside (In re National Environmental Waste Corp.)*, 129 F.3d 1052 (9th Cir. 1997), *cert. denied*, 524 U.S. 952, 118 S.Ct. 2368, 141 L.Ed.2d 736 (U.S.1998), the debtor had, prior to bankruptcy, entered into a contract with a city to provide solid waste handling services. The contract, similar to contracts with three other solid waste enterprises, automatically renewed from year to year, subject to the city's right to cancel on eight years' notice without cause. A committee formed by the city reviewed the four contracts and concluded that the eight-year notice requirement was not beneficial to the city and recommended that the eight-year termination notices be given.

The debtor filed a Chapter 11 petition. After the petition was filed, at a meeting in which representatives of the debtor and the other waste haulers participated, the city council approved the committee's recommendation to terminate the contracts. Two weeks later, the city gave notice of termination to all four solid waste enterprises. The next year, the debtor's plan of reorganization was confirmed and the following year the debtor informed the city that it considered the notice of termination to be void as a violation of the automatic stay. The city moved for an order retroactively annulling the automatic stay.

The bankruptcy court granted the motion and the district court affirmed. The Court of Appeals for the Ninth Circuit affirmed based on a determination that the equities of the situation balanced in favor of the city. The circuit court recognized, "Thus, this court, similar to others, balances the equities in order to determine whether retroactive annulment is justified." 129 F.3d at 1055. In balancing the equities of that situation, the court held that the following facts justified retroactive relief to validate the contract termination: (1) the debtor failed to warn the city that the termination of the contract would be considered a violation of the stay despite its attendance at the meeting in which the decision to terminate the contracts was made; (2) the debtor's plan was confirmed in reliance on the termination of the contract and the debtor did not raise the stay violation issue until after confirmation; (3) the city terminated its contracts with all of its waste haulers, not just the debtor, because of the eight-year notice requirement; (4) the eight-year length of the required notice period in the contract was onerous; (5) there was prej-

udice to the city by giving the debtor exclusive rights in serving the city for an extended period of time; (6) the debtor reinforced the perception that the termination was valid by failing to challenge it either at the city council meeting or in its reorganization plan; (7) there was possible prejudice to other parties who confirmed the plan in reliance on the contract having been terminated; (8) there was a lack of prejudice to the debtor if the stay were annulled; and, (9) the bankruptcy court found that it would have granted the relief from the stay had the city applied for relief before terminating the contract.

· In *Molson v. Standard Federal Bank (In re Molson)*, 110 F.3d 64, 1997 WL 133320 (6th Cir.1997) (published disposition, unpublished opinion), the debtors obtained a loan that was secured by a mortgage on their home but they defaulted immediately. The mortgagee started foreclosure proceedings and a foreclosure sale was scheduled. The debtors filed a bankruptcy petition and the mortgagee canceled the foreclosure sale. The debtors' bankruptcy petition was thereafter involuntarily dismissed.

After the debtors had been in default for three years, the bank again scheduled a foreclosure sale. The debtors filed another bankruptcy petition. The bank ignored the bankruptcy and proceeded with the foreclosure sale. The bankruptcy petition was dismissed when no plan was filed. The debtors subsequently filed two other bankruptcy petitions that were also dismissed because of failures to file certain documents.

After the six-month redemption period expired, the mortgagee initiated an eviction proceeding. Six months later, and four years after the initial default, the debtors were evicted from the property. The debtors then commenced a wrongful eviction lawsuit in state court. In that action, the mortgagee argued that the automatic stay was ineffective to prevent foreclosure because the debtors had abused the bankruptcy process. The state court judge directed the parties to return to the bankruptcy court for a determination of whether the foreclosure sale violated the automatic stay.

The bankruptcy court reopened the bankruptcy case and retroactively annulled the stay that was in effect at the time of the foreclosure sale. The district court affirmed. The Court of Appeals for the Sixth Circuit, in an unpublished opinion, affirmed the decision of the district court, and concluded that the bankruptcy court did not abuse its discretion in annulling the automatic stay.

In *Jewett v. Shabahangi (In re Jewett)*, 146 B.R. 250 (9th Cir. BAP 1992), the debtor was the owner of an apartment building. Due to the debtor's default on the note secured by a second mortgage on the property, the mort-

the effect of Ms. Steeley's voluntarily dis-missal on that *in rem* order.[43] Or that

gagee conducted a non-judicial foreclosure sale at which another party purchased the property. The purchaser entered into a written agreement to sell the property to a fourth party. Prior to the recordation of the foreclosure deed, the debtor filed a Chapter 13 petition. After filing the bankruptcy, the debtor filed an adversary proceeding against the purchaser at the foreclosure sale to avoid the foreclosure deed and quiet title to the property. Subsequent to the filing of the adversary proceeding, the foreclosure deed was recorded and the purchaser filed a motion to have the automatic stay annulled so as to validate the transfer of the property.

The bankruptcy court granted the motion on the grounds that: (1) the purchaser's interest in the property was not adequately protected; (2) the debtor did not have equity in the property when the sale took place; (3) the property was not necessary for the debtor's reorganization; (4) the purchaser had more invested in the property than did the debtor; and, (5) the debtor collected rents for an extended period, let the first and second mortgages go into default and waited until the last minute to file a Chapter 13 petition. The bankruptcy appellate panel affirmed. The opinion of that court reads in part, "[W]e conclude that, under equitable principles, the bankruptcy court's decision was proper." 146 B.R. at 253.

In *Noonan v. Jones (In re Jones)*, 176 B.R. 645 (D.N.H.1994), *appeal dismissed as moot*, 53 F.3d 327 (1st Cir.1995), the debtor filed a Chapter 13 petition but did not list the lessor of his residence or otherwise notify his lessor of the bankruptcy. The lessor, without notice of the bankruptcy, began eviction proceedings in state court. The debtor filed an answer and counterclaim in the eviction proceeding but did not notify the state court or the debtor of his pending bankruptcy. The debtor and his lessor executed an agreement in the state court eviction case which required the debtor to make certain payments to the lessor, terminated the debtor's lease of the premises, and granted the debtor judgment for possession. When the debtor failed to tender payments required by the agreement, the lessor moved the state court for a writ of execution. The debtor then filed a pleading in the eviction case opposing the issuance of a writ of execution. In that pleading, and for the first time, the debtor notified the state court and the lessor of the pending bankruptcy petition. The lessor moved the bankruptcy court for annulment of the stay.

The bankruptcy court annulled the stay and the debtor appealed. The district court affirmed the bankruptcy court because: (1) the leased property was not necessary to an effec-tive reorganization; (2) the debtor's income was insufficient to fund his Chapter 13 plan; (3) the debtor had no equity in the leasehold interest; (4) the debtor's rent was four months in arrears and his Chapter 13 plan did not propose to make any payments to the lessor; (5) the lessor began the state eviction proceeding in good faith and without knowledge of the debtor's pending bankruptcy; and (6) the lessor promptly sought relief from the automatic stay upon learning of the bankruptcy.

See also: *In re Behr*, 78 B.R. 447 (Bankr. D.S.C.1987); *In re Bresler*, 119 B.R. 400 (Bankr.E.D.N.Y.1990); *Formis v. National Community Bank (In re Formisano)*, 148 B.R. 217 (Bankr.D.N.J.1992); *In re Hall*, 216 B.R. 702 (Bankr.E.D.N.Y.1998); *Germer v. Farmers State Bank of Plymouth, Nebraska (In re Germer)*, 107 B.R. 217 (Bankr.D.Neb.1989); *In re Kornhauser*, 184 B.R. 425 (Bankr.S.D.N.Y. 1995); *Reichenbach v. Kizer (In re Reichenbach)*, 174 B.R. 997 (Bankr.E.D.Ark.1994); *In re Raanan*, 181 B.R. 480 (Bankr.C.D.Cal. 1995); *Blatnick v. Sanders (In re Sanders)*, 198 B.R. 326 (Bankr.S.D.Cal.1996); *In re Tanksley*, 70 B.R. 429 (Bankr.E.D.Mo.1987); *In re Lipuma*, 167 B.R. 522 (Bankr.N.D.Ill. 1994).

**43.** See *In re Graffy*, 216 B.R. 888, 891 (Bankr. M.D.Fla.1998) (where debtor filed his current and two prior Chapter 13 cases in effort to circumvent bankruptcy court orders regarding filing of his tax returns and to interrupt Internal Revenue Service collection efforts, debtor's voluntary dismissal of Chapter 13 case would be conditioned to bar debtor from filing any bankruptcy case in any jurisdiction which sought relief from any claim filed by IRS concerning debtor's tax obligations); *In re Spear*, 203 B.R. 349, 354 (Bankr.D.Mass. 1996) (debtor's voluntary dismissal of Chapter 13 case would be conditioned to preclude debtor from refilling another bankruptcy petition for 180 days because of debtor's repeated filings and dismissals, and repeated requests for continuances, without hope of successful reorganization, in order to obtain benefit of automatic stay, for purpose of forestalling foreclosure on condominium); *In re Greenberg*, 200 B.R. 763, 770 (Bankr.S.D.N.Y.1996) (chapter 13 debtor-tenant-shareholder's motion to dismiss would be granted, but with provision that, if debtor filed another bankruptcy case, automatic stay would not apply to current state court litigation between debtor and co-operative apartment owner, or to co-op's right to foreclose its security interest or evict debtor); *In re Dilley*, 125 B.R. 189, 198 (Bankr.N.D.Ohio 1991) (where debtor

member may consider the pending motion for relief from stay filed by the same creditor seeking relief as to the same real estate. Or finally, that member may con-

failed to propose a confirmable plan for 14 months and to comply timely with court orders, resulting in unreasonable delay, debtor's voluntary dismissal of Chapter 13 case would be conditioned to bar debtor from filing any Chapter 11, 12, or 13 cases for a period of 12 months); *In re Dyke*, 58 B.R. 714, 718 (Bankr. N.D.Ill.1986) (where debtors sought dismissal of first Chapter 13 case after four years into a confirmed plan, in anticipation of motions for relief from the stay for failure to make post-confirmation mortgage and car note payments, in order to file another Chapter 13 petition to invoke new automatic stay, to circumvent the sanctions imposed by § 109(f), and to change unpaid post-petition debts in the first case into pre-petition debts in the second case, and debtors in fact filed the second petition before first case was dismissed, debtor's voluntary dismissal of Chapter 13 case would be conditioned to prevent debtor's from filing another case for 6 months).

See also *Frieouf v. United States (In re Frieouf)*, 938 F.2d 1099, 1105 (10th Cir.1991) (bankruptcy court properly, upon dismissal of Chapter 11 case, denied debtor discharge of debts scheduled in dismissed case for a period of three years where debtor waited nine months before filing initial plan of reorganization, plan was not accompanied by disclosure statement, failure to file disclosure statement continued for more than one year after bankruptcy court explicitly ordered filing of statement, subsequent plans for reorganization were submitted by debtor only after motions to dismiss were pending, and debtor failed to appear at hearing to show why case should not be dismissed with prejudice), *cert. denied*, 502 U.S. 1091, 112 S.Ct. 1161, 117 L.Ed.2d 408 (1992); *In re Narod*, 138 B.R. 478, 483 (E.D.Pa.1992) (fact that debtor had filed six bankruptcy proceedings on the eve of attempted foreclosure sales, and then voluntarily dismissed the proceedings before an order for relief could be entered on the mortgagee's behalf, constituted sufficient showing of "cause" for reopening of most recent case in order to impose sanctions and make dismissal subject to 180–day refiling bar); *Leavitt v. Soto (In re Leavitt)*, 209 B.R. 935, 940 (9th Cir. BAP 1997) (where debtor filed Chapter 13 solely in attempt to defeat otherwise non-dischargeable judgment entered against him in state court litigation, while at the same time concealing information and assets and exaggerating expenses in attempt to justify plans which provided zero or three percent pay-outs on state court judgment debt, bankruptcy court properly dismissed Chapter 13 case with prejudice to debtor's ability to discharge his then-existing debts in any subsequent bankruptcy case).

See also *In re Robertson*, 206 B.R. 826, 831 (Bankr.E.D.Va.1996) (debtor's third successive Chapter 13 petition would be dismissed with prejudice to debtor's ability to again file for bankruptcy relief for period of 417 days, based on evidence that debtor was filing for Chapter 13 relief in order to delay payment of federal income tax debt and to gain leverage in settlement of ongoing tax dispute with the IRS, where 417 days was actual time that debtor had unreasonably delayed IRS in collection of tax debt because of serial Chapter 13 filings); *Simmons v. Simmons (In re Simmons)*, 149 B.R. 586, 590 (Bankr.W.D.Mo. 1993) (debtor who had filed a previous Chapter 12 case and two previous Chapter 13 cases, all for the purpose of preventing foreclosure, would be enjoined, upon dismissal of present Chapter 13 case, from filing another petition under either Chapter 12 or Chapter 13 for a period of 180 days); *In re Earl*, 140 B.R. 728, 740 (Bankr.N.D.Ind.1992) (debtor's fourth Chapter 13 case would be dismissed and debtor would be enjoined from filing bankruptcy for 6 months where fourth case was filed on eve of foreclosure after first two cases had been dismissed for failure to make plan payments and third case had been dismissed for failure to file any plan of reorganization, debtor had only paid her original mortgage obligation incurred on November 6, 1970 through December 1, 1979, when original petition was filed in 1984, there was an arrearage of 69 monthly installments, and a total arrearage of $12,784.15, and arrearage claim in fourth case was $31,720.00 for mortgage payments due from January 1, 1980 through August 1, 1991); *In re Penz*, 121 B.R. 602, 604 (Bankr.E.D.Okla.1990) (debtors' Chapter 12 case would be dismissed with prejudice to the refiling by the debtors of any Chapter 11, 12, or 13 petition for 180 days, where debtors had filed three prior Chapter 12 and Chapter 7 petitions for purpose of delaying foreclosure); *Shearson Lehman Hutton Mortgage Corp. v. Hundley (In re Hundley)*, 103 B.R. 768, 771 (Bankr.E.D.Va.1989) (deed of trust holder was entitled to relief from stay for cause and debtor's Chapter 13 case would be dismissed, and debtor enjoined from filing another bankruptcy petition for a period of one year, where debtor had filed 8 bankruptcy petitions in a period of 5 years for the purpose of delaying foreclosure).

sider the pending Chapter 13 trustee's motion to dismiss.[44]

## VI. Order

For the above reasons, it is **ORDERED, ADJUDGED, AND DECREED** that:

1. The debtor's *Motion to Retain Jurisdiction* is **DENIED**;

2. Magna Mortgage Company's oral *Motion to Transfer Case* is **GRANTED**; and,

3. This case is **TRANSFERRED** to the Eastern Division of the Northern District of Alabama. The scheduling of all pending matters, as well as the debtor's section 341 first meeting of creditors, should be addressed by the clerk of court.

## ORDER DENYING MOTION TO RECONSIDER AND/OR MOTION TO ALTER OR AMEND

The debtor asks this Court to reconsider and amend its January 25, 1999 Order transferring this case to the Eastern Division of this District. That Order was based partly on the debtor having filed five prior Chapter 13 cases. Along with her *Motion to Reconsider and/or Motion to Alter or Amend*, the debtor submitted admissable evidence explaining why some of the earlier petitions were filed. The Court has considered that evidence and agrees that there is some mitigation of the consequences of filing five cases, however, the debtor did not offer any argument or evidence to convince the Court that the debtor's filing of her later cases and the events that occurred in those cases do not support the Court's conclusions.

■ On the other hand, while the debtor's new evidence is helpful to the Court, in finding that the instant case was filed in bad faith, this Court need not have considered that the debtor had filed five prior

cases, as the Court found that the debtor's attempt to have this Court act as a substitute for, and a reviewing court for, another court in this District, was in and of itself, bad faith. Clearly, such actions, regardless of whether the debtor had any malice in taking them, were an attempt to circumvent the established appeal process and were therefore in bad faith. The legal effect is the same. A litigant who is unhappy with a ruling from one court may not seek relief from another court of equal judicial status. To do so would allow that litigant to circumvent the judicial process by picking the court she thinks will give her the result she thinks is just.

In contrast, the debtor is acutely aware of her remedies. She appears however, to want to pick and choose what parts of those remedies she is willing to accept. When the debtor concluded that she did not receive fair treatment in her most recent prior case, she chose the proper procedure and filed appeals of three rulings in that case. *She was successful on two and the third is still pending.* However because the debtor was unable to obtain stays of the orders appealed, rather than accepting the consequences of the operations of the appeal process, the debtor stepped out of that process and filed the instant case, thereby obtaining a de facto stay of the appealed orders, even though the intended process had denied her such relief.

The debtor disagrees and argues that she filed the latest case in this Division because she did not receive a fair hearing in the prior court, would not receive a fair hearing in that court if she had filed the present cases in that court (as the rules of this Court require) and that by filing the case *only* in this Court could she receive a fair hearing. This Court regrets that the debtor believes that she was not treated fairly. But this Court understands, as the

---

44. This member of this Court recognizes that the debtor has for almost seven months succeeded in avoiding the enforcement of orders of this Court and that a transfer of this case to another division will almost certainly extend that time even further. But if this Court expects the debtor to abide by the rule of law, this Court must also. Sometimes the betterment of the whole is an inconvenience for the few.

debtor should because of her two successful appeals, that her remedy lies in the judicial process, not in circumventing that process.

■ The debtor argues further that the matter of transfer is not properly before the Court because Magna Mortgage did not file a written motion to transfer. That argument is without merit. Ms. Steeley is estopped from making it as she agreed that the issue of transfer was before the Court and she agreed that this Court should decide that issue. At the hearing on this matter, the Court specifically asked Ms. Steeley whether she agreed that the issue of venue was before the Court for decision and she said that she did. She may not now take a contrary position.[1]

Finally the debtor seeks to invoke the equity powers of this Court. This Court is reminded by the Chapter 13 Trustee that Ms. Steeley filed the current case on August 8, 1998; that she made one Chapter 13 plan payment of $1,069.00 on September 11, 1998; and that the debtor has failed to make any payment since.[2]

For the reasons expressed in this Court's order of January 25, 1999, and those herein, the Court finds that the debtor's motion is due to be denied.

It is therefore **ORDERED, ADJUDGED and DECREED** that the *Motion to Reconsider and/or Motion to Alter or Amend* is **DENIED**.

---

1. Ms. Steeley's original motion was for this Court to retain "jurisdiction" of this case. All agree that there are no jurisdictional issues involved. On the other hand, at the oral argument on this matter the Court specifically asked the debtor if she objected to this Court's consideration of the venue and transfer issues. Ms. Steeley did not. This Court, Ms. Steeley, and Magna understood at that time that this Court would decide the issue of venue and would either retain the case or transfer the case to another division of this Court. Ms. Steeley is estopped from taking the position that the issue of transfer is not before the Court because Magna did not file a written motion to transfer. See the citations in note 10 to this Court's order of January 25, 1999.

2. The Chapter 13 Trustee has filed a formal motion to dismiss this case but this Court did not consider that motion because of the transfer.